**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

**AZAD ALAMGIR KABIR,**

Plaintiff,

v.

**WEBMD LLC, THOUGHTi INC., and JOHN DOE 1 (believed to be OpenAI, Inc.),**

Defendants.

Civil Action No. 2:25-cv-15207 (EP) (JSA)

---

**THIRD AMENDED COMPLAINT**

1. Plaintiff, Azad Kabir, M.D., MSPH, proceeding pro se, brings this Third Amended Complaint against Defendants **WebMD, LLC** and **THOUGHTi, Inc.**, and **JOHN DOE 1 (Believed to be OpenAI, Inc.)** and alleges as follows:

2. The invocation of a named AI model ('saas-openai-gpt-4o-mini') in conjunction with the 'conditions_renderer_v2' function shows that the system produces structured, score-based differential diagnosis output—an operation that mimics the logic flows and ranking behavior protected by Plaintiff's patent. General-purpose large language models are not inherently capable of producing such medically weighted outputs without supplemental logic modules or structured databases, suggesting a hybrid implementation incorporating Plaintiff's patented methods.

**I. INTRODUCTION**

3. This action arises under the patent laws of the United States, 35 U.S.C. § 271, the Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Copyright Act, 17 U.S.C. § 501 et seq. Plaintiff seeks damages and injunctive relief to remedy Defendants' infringement of U.S. Patent No. 11,972,865 B1, and US 9,536,051 B1 (Exhibit B), misappropriation of trade secrets, and unlawful copying of Plaintiff's proprietary database. Plaintiff attaches the following exhibits and incorporates each by reference as though fully set forth herein: Exhibit A (Timeline of Events); Exhibit B (U.S. Patent No. 9,536,051 B1, in addition to the previously submitted U.S. Patent No. 11,972,865 B1); Exhibit 32 (Updated Patent Validity Analysis, filed under seal as it contains Plaintiff's trade secrets); and Exhibit 44 (WebMD API JSON Payload Showing Use of OpenAI Model).

4A. **U.S. Patent No. 11,972,865 B1**, granted in 2024, is a continuation of **U.S. Patent No. 9,536,051 B1**, originally granted in 2017. Both patents share a common specification and protect substantially similar core diagnostic logic. Continuation applications with additional claims remain active to further strengthen protection and address ongoing or future infringement.

4B. While both patents protect the core logic involving symptom-to-disease mapping and ranked diagnostic outputs, the claims issued in the 2024 continuation (the '865 patent) are more narrowly tailored and rigidly structured in their formulation. By

contrast, the original '051 patent contains certain limitations and structural distinctions that may provide broader protection in specific technical or legal contexts.

4C. Plaintiff has included the previously granted '051 patent in this action to reflect the severity-of-illness–based articulation of the protected diagnostic model and to preserve all applicable claims pending the outcome of discovery. Inclusion of the '051 patent does not waive Plaintiff's rights under the subsequently granted '865 patent. Plaintiff expressly reserves the right to assert and demonstrate infringement under either or both patents as the factual record develops.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (jurisdiction over patent and trade secret claims).

6. Venue is proper under 28 U.S.C. § 1400(b) because all Defendants conduct substantial business in this District.

7. The Court has personal jurisdiction over Defendants because WebMD markets and provides its "Symptom Checker" tool to New Jersey residents, and THOUGHTi, Inc. and **JOHN DOE 1 (Believed to be OpenAI, Inc.)** purposefully directed activities into this District by providing services to WebMD that relied on Plaintiff's intellectual property.

## III. FACTUAL ALLEGATIONS

8. Plaintiff is the owner of **U.S. Patent No. 11,972,865 B1**, "High Probability Differential Diagnoses Generator And Smart Electronic Medical Record."

9. Plaintiff also owns copyrights in a proprietary medical database developed between 2011–2024, containing over 2,200 clinical features mapped to more than 15,000 diagnoses.

10. In 2017, Plaintiff engaged **THOUGHTi, Inc.** (then THOUGHTi LLC) to perform engineering tasks requiring access to Plaintiff's database and proprietary algorithms.

11. THOUGHTi personnel, including CTO **Nilesh Patkar**, accessed Plaintiff's system under **non-disclosure agreements**.

12. Instead of limiting their work to contracted tasks, THOUGHTi **retained, copied, and commercialized** Plaintiff's proprietary dataset and algorithms.

13. On information and belief, **THOUGHTi transferred Plaintiff's proprietary database, code, and methods to WebMD** around 2017–2018.

14. In 2020, Plaintiff discovered **WebMD's Symptom Checker** incorporated strikingly similar functionality, logic flows, and clinical mappings, consistent with Plaintiff's patent and database.

15. On information and belief, **THOUGHTi, Inc. subsequently transferred Plaintiff's proprietary database, code, and methods to Defendant WebMD, LLC** around 2017–2018.

16. To assist the Court in understanding the sequence of events and relationships, Plaintiff has prepared a consolidated **timeline of key dates, communications, and transactions**, attached as **Exhibit A**. This timeline documents THOUGHTi's initial access to Plaintiff's system, subsequent retention and transfer of proprietary data, and WebMD's later deployment of its NEW Symptom Checker. It provides important context for Plaintiff's claims of trade secret misappropriation, copyright infringement, and patent infringement.

17. As a result, WebMD generated substantial revenue (~$700M annually) while infringing Plaintiff's patent and unlawfully exploiting Plaintiff's trade secrets.

**18A.** Upon information and belief, Defendant WebMD's "Symptom Checker" tool integrates backend logic from a third-party vendor, **OpenAI, Inc.**, which powers the "saas-openai-gpt-4o-mini" model invoked in real-time by the "conditions_renderer_v2" function.

**18B.** This backend logic appears responsible for generating **ranked differential diagnoses** using **symptom-to-condition scoring**, as evidenced by real-time API outputs. These outputs show strength-of-match values, tiered match labels (e.g., "High Match"), and dynamically generated lists of candidate conditions—functionality falling within the scope of Plaintiff's patent claims.

**18C.** Because OpenAI's role is not fully known at this stage, Plaintiff temporarily names **"JOHN DOE 1 (believed to be OpenAI, Inc.)"** as a **co-conspirator, joint tortfeasor**, and **indirect infringer**, responsible for contributing to or inducing WebMD's infringement.

**18D.** This joinder is based on the doctrine of **divided infringement** and **induced infringement**, including but not limited to the framework established in *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015) (en banc).

---

**Parties" or "Joinder"**:

19. Plaintiff alleges that Defendants WebMD, LLC and THOUGHTi, Inc. are properly joined in this action under Fed. R. Civ. P. 20(a)(2), as the claims asserted against them arise out of the same transaction or occurrence—namely, the misappropriation, transfer, and use of Plaintiff's proprietary medical database, code, and patented methods—and raise common questions of law and fact, including infringement, trade secret misappropriation, and unjust enrichment.

20. **JOHN DOE 1 (Believed to be OpenAI, Inc.):** Plaintiff notes that while OpenAI, Inc. is currently believed to be the entity operating the backend model invoked as 'saas-openai-gpt-4o-mini', discovery may reveal an alternative third-party vendor. Plaintiff therefore reserves the right to substitute this placeholder defendant with the correct party pursuant to Fed. R. Civ. P. 15 and 21. (Exhibit 44).

## V. LEGAL CLAIMS

21. **Count 1 – Patent Infringement (35 U.S.C. § 271)**

    **Against WebMD, LLC** and **JOHN DOE 1 (Believed to be OpenAI, Inc.):** Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

    I. On information and belief, John Doe 1 either knew or was willfully blind to the fact that its model was being used in conjunction with WebMD's symptom scoring interface in a manner that infringes Plaintiff's patented method claims.

    II. Defendant's "Symptom Checker" tool incorporates methods covered by Plaintiff's U.S. Patent No. US11,972,865 B1 and US 9,536,051 B1 (Exhibit B) without authorization.

    III. Defendant's infringement is willful and intentional, causing Plaintiff substantial and irreparable harm.

    IV. Plaintiff is entitled to relief including injunctive relief, damages, and enhanced remedies under 35 U.S.C. §§ 283–285.

22. **Count 2 – Copyright Infringement (17 U.S.C. § 501 et seq.)**

    **Against WebMD, LLC, JOHN DOE 1 (Believed to be OpenAI, Inc.) and THOUGHTi, Inc., jointly and severally:** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

    I. Plaintiff is the creator and exclusive owner of a unique and original medical database containing over 2,200 clinical features cross-referenced with more than

        15,000 diagnoses, developed between 2011 and 2024 through substantial skill, effort, and investment.

II. The compilation, structure, selection, coordination, and arrangement of this database constitute original works of authorship subject to copyright protection under U.S. law (17 U.S.C. §§ 101, 102).

III. On information and belief, Defendant THOUGHTi, Inc., while acting under limited authorization as a contractor, **reproduced, retained, and distributed copies** of Plaintiff's copyrighted database and algorithms without license or permission.

IV. On information and belief, THOUGHTi, Inc. subsequently transferred Plaintiff's copyrighted work to Defendant WebMD, LLC, which then incorporated substantial portions of that work in developing and deploying its "Symptom Checker" tool.

V. Defendants' acts of reproduction, distribution, and creation of derivative works were unauthorized and constitute infringement under 17 U.S.C. § 501.

VI. Defendants' infringement has caused Plaintiff significant economic harm, including lost licensing revenue, dilution of the work's market value, and unjust enrichment to Defendants.

VII. Plaintiff is entitled to all remedies provided under the Copyright Act, including actual damages, disgorgement of profits, statutory damages, injunctive relief, and costs and attorney's fees (17 U.S.C. §§ 502–505).

23. **Count 3 – Trade Secret Misappropriation (DTSA, 18 U.S.C. § 1836) Against THOUGHTi, Inc.,  JOHN DOE 1 (Believed to be OpenAI, Inc.) and WebMD, LLC, jointly and severally:** Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

   I. Plaintiff developed and owns a proprietary medical database, algorithms, and related methods (the "Doctor AI System"), which embody significant clinical mappings between thousands of symptoms and diagnoses. These materials have independent economic value because they are not generally known to, and are not readily ascertainable by, other persons who can obtain economic value from their disclosure or use.

   II. Plaintiff undertook reasonable measures to maintain the secrecy of these trade secrets, including use of non-disclosure agreements, controlled access, password protections, and contractual restrictions placed on third-party contractors such as THOUGHTi, Inc.

   III. On information and belief, Defendant THOUGHTi, Inc., while engaged as a contractor in 2017–2018, accessed Plaintiff's database and code under limited authorization and then **retained, copied, and disclosed those trade secrets without consent**.

   IV. On information and belief, THOUGHTi, Inc. subsequently transferred or licensed Plaintiff's proprietary database and methods to Defendant WebMD, LLC, which

    used them in developing and operating its Symptom Checker tool beginning around 2017–2018.

V.    Defendants' conduct constitutes "misappropriation" under the DTSA because they acquired Plaintiff's trade secrets by improper means and used/disclosed them without Plaintiff's consent.

VI.   Defendants' acts of misappropriation occurred in interstate and foreign commerce, as the Symptom Checker is marketed and accessed nationwide, and THOUGHTi, Inc. operates across state and international borders.

VII.  As a direct and proximate result of Defendants' misappropriation, Plaintiff has suffered and continues to suffer irreparable harm, including loss of competitive advantage, dilution of trade secret value, and unjust enrichment to Defendants in the form of revenues exceeding hundreds of millions of dollars.

VIII. Plaintiff is entitled to injunctive relief, compensatory damages, exemplary damages, and attorney's fees as provided by the DTSA, 18 U.S.C. § 1836(b)(3).

## V. REQUESTED RELIEF

24. Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and grant the following relief:

I.    **Injunctive Relief**

    Issue preliminary and permanent injunctions enjoining Defendants, their officers,

agents, servants, employees, affiliates, and all persons acting in concert with them from making, using, selling, offering for sale, importing, distributing, or otherwise exploiting Plaintiff's patented technology, database, code, or trade secrets.

II. **Preservation and Disclosure**

Order Defendants to preserve and produce all communications, contracts, payments, file transfers, and related materials concerning the subject matter of this action.

III. **Damages**

Award Plaintiff compensatory damages adequate to compensate for Defendants' infringement and misappropriation, including but not limited to reasonable royalties, lost profits, and disgorgement of unjust enrichment.

IV. **Enhanced and Punitive Damages**

Award treble damages under 35 U.S.C. § 284 for willful patent infringement, and punitive damages under the Defend Trade Secrets Act ("DTSA") for trade secret misappropriation.

V. **Accounting and Destruction**

Order Defendants to provide a full accounting of all revenues, profits, and other benefits derived from their unlawful conduct, and further order the destruction (or, at Plaintiff's election, the delivery up to Plaintiff) of all infringing materials, copies, databases, models, and derivative works in Defendants' possession, custody, or control.

VI. **Interest, Fees, and Costs**

Award Plaintiff pre- and post-judgment interest, reasonable attorney's fees (where recoverable), and costs of this action.

VII. **Further Relief**

Grant such other and further relief as the Court may deem just and proper.

**VI. JURY DEMAND**

25. Plaintiff demands a trial by jury on all issues triable as of right.

**Respectfully submitted,**

**/s/ Azad Kabir**

Azad Alamgir Kabir, MD

Pro Se Plaintiff

1120 Beach Blvd

Biloxi, MS 39530

Email: azad.kabir@ddxrx.net

Tel: (228) 342-6278

**Dated: October 6, 2025**

**Exhibits Attachments**

1. **Exhibit A** – Timeline of Events (including cited exhibits 3, 4, 5, 6, 7, 8, 12, 13, 16, 19, 20, 21, 22, 23, 24, 25, 26, 28, and 29)

2. **Exhibit B** – U.S. Patent No. 9,536,051 B1 (Granted 2017), titled *"High Probability Differential Diagnoses Generator"* — the original patent in the family, serving as the primary application from which the continuation patents derive

3. **Exhibit 1** - U.S. Patent No. 11,972,865 B1 (Granted in 2024) – The First and Second Amended Complaints were filed based on infringement of this patent

4. **Exhibit 32 (Filed Under Seal as It Contains Plaintiff's Trade Secrets)** – Patent Validity Analysis (Updated since last submission): A 147-page expert analysis substantiating the strength and validity of U.S. Patent No. 11,972,865 B1. The core arguments supporting validity also apply to U.S. Patent No. 9,536,051 B1 due to their shared specification and structural overlap.

5. **Exhibit 34** - In-Pursuit-of-an-Expert-Artificial-Intelligence-System (previously submitted research comparison)

6. **Exhibit 35** - Similarities of WebMD and Kabir Patent Results

7. **Exhibit 44** – WebMD API JSON Payload Captured via Browser Inspection, Demonstrating Use of a Model Referenced as "saas-openai-gpt-4o-mini" and Conditions Renderer Logic Consistent with the Infringing Diagnostic Scoring Process.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day October, 2025, I filed the **Third Amended Complaint**, in which all substantive paragraphs are numbered continuously from start to finish, with the Clerk of Court using the CM/ECF system. The CM/ECF system will send notification of such filing to all counsel of record.

Respectfully submitted,

/s/ Azad Kabir

Azad Kabir, MD

Pro Se Plaintiff