## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AZAD ALAMGIR KABIR, | Civil Action No. 2:25-cv-15207 (EP) (JSA) |
| Plaintiff, | Motion Return Date: 12/1/2025 |
| | Oral Argument Requested |
| v. | |
| WEBMD LLC, THOUGHTi, INC., and JOHN DOE 1 (believed to be OpenAI, Inc.), | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WEBMD LLC'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

Jeffrey A. Mitchell, Esq.
Nicholas S. Pradaxay, Esq.
**ELLIS GEORGE LLP**
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone: (212) 413-2600
Facsimile: (212) 413-2629
jmitchell@ellisgeorge.com
npradaxay@ellisgeorge.com

Michael P. Adams (Admitted *pro hac vice*)
**DYKEMA GOSSETT PLLC**
111 Congress Avenue, Suite 1800
Austin, Texas 78701
Telephone: (512) 703-6315
Facsimile:  (512) 703-6399
madams@dykema.com

Steven McMahon Zeller (Admitted *pro hac vice*)
**DYKEMA GOSSETT PLLC**
10 S. Wacker Drive, Suite 2300
Chicago, Illinois 60606
Telephone: (312) 876-1700
Facsimile:  (312) 876-1155
szeller@dykema.com

*Attorneys for Defendant WebMD LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ iii

I.     INTRODUCTION ........................................................................................1

II.    BACKGROUND ..........................................................................................2

III.   LEGAL STANDARDS .................................................................................5

IV.    ARGUMENT.................................................................................................6

       A.     Count 1 Fails to State a Claim for Patent Infringement Because
              the Asserted Patents Are Invalid Under 35 U.S.C. § 101. ...................7

              1.     Subject Matter Eligibility Under *Alice*. .....................................7

              2.     Claim 9 of the '865 Patent is Representative of the
                     Claims in Both Asserted Patents.................................................9

              3.     Claim 9 of the '865 Patent is Directed to an Abstract
                     Idea...........................................................................................11

              4.     Claim 9 of the '865 Patent Fails Alice Step Two. ....................13

       B.     Count 1 Fails to State a Claim for Infringement of the '051
              Patent. ................................................................................................16

       C.     Count 2 of the TAC Fails to State a Claim for Copyright
              Infringement. .....................................................................................17

              1.     Plaintiff Has Not Alleged Ownership of a Copyright
                     Registration. .............................................................................17

              2.     Plaintiff Has Not Sufficiently Alleged Copying of a
                     Valid Copyright.........................................................................19

       D.     Count 3 Fails to Allege a Valid Claim for Trade Secret
              Misappropriation. ..............................................................................20

              1.     Plaintiff Has Not Sufficiently Pled Ownership of any
                     Trade Secrets.............................................................................21

i

# **TABLE OF CONTENTS**
## **(Continued)**

Page

2.    Plaintiff's Allegations Contradict His Assertion of Reasonable Measures to Maintain Confidentiality of His Alleged Trade Secrets. ...........................................................22

3.    Plaintiff Has Not Sufficiently Pled Misappropriation by WebMD. ........................................................................25

V.    CONCLUSION ..........................................................................26

# TABLE OF AUTHORITIES

CASES                                                                                Page(s)

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121
 (Fed. Cir. 2018)................................................................................7

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354
 (Fed. Cir. 2018)................................................................................7

*AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27 (Fed. Cir. 2024)....................................16

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014)................6, 7, 8, 9, 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).......................................................5

*Baraka v. McGreevey*, 481 F.3d 187 (3d Cir. 2007) ...................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)......................................5

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) ...........................9

*Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342 (Fed. Cir. 2021)..........................16

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882
 (Fed. Cir. 2019)................................................................................9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
 |776 F.3d 1343 (Fed. Cir. 2014)..........................................................10

*Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548 (3d Cir. 2002)...........19

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*,
 307 F.3d 197 (3d Cir. 2002) ......................................................17, 19

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178
 (Fed. Cir. 2020)................................................................................8

*Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016)................12

*Fast 101 Pty Ltd. v. Citigroup Inc.*, 424 F. Supp. 3d 385 (D. Del. 2020),
 *aff'd*, 834 F. App'x 591 (Fed. Cir. 2020) ...........................................9

# TABLE OF AUTHORITIES
## (Continued)

CASES                                                                    Page(s)

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296 (2019) ............................................................................................... 17

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ....................................... 5

*Goddard v. Interserver.net*, No. 25-cv-3883 (EP) (MAH), 2025 U.S. Dist. LEXIS 126438 (D.N.J. July 2, 2025) ................................ 18, 19

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013) .... 6

*Highland Consulting Grp., Inc. v. Soule*, 74 F.4th 1352 (11th Cir. 2023) .............. 21

*Insulet Corp. v. EOFlow, Co.*, 104 F.4th 873 (Fed. Cir. 2024) ............................... 21

*Inteliclear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653 (9th Cir. 2020) ......... 23

*JK Soft, Inc. v. Innoas, Inc.*, Civil Action No. 18-199 (WJM) (CLW), 2025 U.S. Dist. LEXIS 154798 (D.N.J. Aug. 11, 2025) ................................... 20

*Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199 (3d Cir. 2005) ........................ 19

*LendingTree, LLC v. Zillow, Inc.*, 656 F. App'x 991 (Fed. Cir. 2016) .................... 8

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012).......... 7, 8

*Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902 (3d Cir. 1997)............................. 5

*Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892 (3d Cir. 2021) ......................... 21, 25

*OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015)................. 15

*Pauwels v. Deloitte LLP*, 83 F.4th 171 (2d Cir. 2023) ........................................... 25

*Pyrotechnics Mgmt., Inc. v XFX Pyrotechnics LLC*, 38 F.4th 331 (3d Cir. 2022)..................................................................................... 20

*Rearick v. Spanier*, 523 F. App'x 198 (3d Cir. 2013) .............................................. 5

*Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205 (Fed. Cir. 2025), *petition for cert. docketed*, No. 25-505 (Oct. 23, 2025) ............................... 13, 14

# TABLE OF AUTHORITIES
## (Continued)

CASES                                                                          Page(s)

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) ....................11, 12

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017)....6

*Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353 (Fed. Cir. 2020) ........7

*Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161 (Fed. Cir. 2019) .................................8

*Tanksley v. Daniels*, 902 F.3d 165 (3d Cir. 2018) .....................................................6

*Turret Labs. USA, Inc. v. CargoSprint, LLC*, No. 21-952,
    2022 U.S. App. LEXIS 6070 (2d Cir. Mar. 9, 2022) .........................................25

*United Servs. Auto. Ass'n v. PNC Bank N.A.*, 139 F.4th 1332 (Fed. Cir. 2025) .....12

*Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342 (Fed. Cir. 2021).........8

*WhitServe L.L.C. v. Donuts Inc.*, 809 F. App'x 929 (Fed. Cir. 2020) .......................7

STATUTES

17 U.S.C. § 411(a) ....................................................................................................17

18 U.S.C. § 1839(3) ..................................................................................................23

18 U.S.C. § 1839(4) ..................................................................................................21

18 U.S.C. § 1839(5) ..................................................................................................25

18 U.S.C. § 1839(5)(B)(ii).........................................................................................26

35 U.S.C. § 101 ................................................................................................1, 6, 7, 15

OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)...............................................................................................5

## I.    <u>INTRODUCTION</u>

Plaintiff Azad Alamgir Kabir's ("Plaintiff") Third Amended Complaint (the "TAC") alleges that Defendant WebMD LLC ("WebMD") infringed U.S. Patent No. 11,972,865 B1 ("the '865 Patent") and U.S. Patent No. 9,536,051 B1 ("the '051 Patent") (collectively "the Asserted Patents") (Count 1), and copyrights (Count 2), and misappropriated his trade secrets (Count 3). (Dkt. No. 95). WebMD moves to dismiss these claims as they fail as a matter of law. First, the Asserted Patents are invalid under 35 U.S.C. § 101 because they each impermissibly seek to monopolize abstract ideas. Additionally, Plaintiff fails to sufficiently allege any factual allegations of patent infringement with regards to the '051 Patent. Next, Plaintiff's copyright allegations do not meet the statutory pleading requirements, as there is no copyright registration alleged, and Plaintiff fails to sufficiently allege ownership and copying of a valid copyright. Finally, Plaintiff's trade secret claim rests on conclusory assertions unsupported by facts, and Plaintiff fails to sufficiently allege ownership or misappropriation of a trade secret.

For all these reasons, as more fully explained below, WebMD respectfully requests the Court dismiss Counts 1, 2, and 3.

## II.   <u>**BACKGROUND**</u>[1]

On November 2, 2011, Plaintiff allegedly initiated the creation of a "medical decision support software and associated database by engaging Mr. Syed Rashid, a software engineer, to assist with technical implementation." Declaration of Copyright Ownership by Azad Kabir (the "Kabir Copyright Declaration"), at 1 (Dkt. 59-11). Plaintiff "provided [Mr. Rashid] with several medical textbooks for reference, with the explicit instructions to extract data necessary for the preliminary version of the database," which were "later supplemented with PDF copies of multiple advanced medical texts." *Id*.

Between 2013 and 2014, Plaintiff allegedly continued to enhance and refine the system, receiving "valuable input and support" from Dr. Jebun Nahar, who holds a Ph.D. in Cell and Molecular Biology. *Id*. at 2. Dr. Nahar provided "intellectual assistance and research guidance that significantly improved the accuracy of the dataset." *Id*.

As early as August 22, 2017, Nilesh Patkar and Anupam Das (via THOUGHTi INC) began work for Dr. Kabir through Upwork. Declaration of Dr. Kabir (the

---

[1]    All allegations and facts are taken from Plaintiff's TAC (Dkt. No. 95) and the exhibits filed with Plaintiff's Motion for Leave to File Third Amended Complaint (Dkt. No. 59), based on Plaintiff's "request[] that the exhibits previously filed at ECF No. 59 be deemed incorporated by reference as the exhibits to [the Third Amended Complaint]." Notice of Filing of Third Amended Complaint, at 1. (Dkt. No. 95-1). Appendix B attached hereto includes a list of the cited Exhibits for the Court's convenience.

"Kabir Declaration"), at 2 (Dkt. No. 59-2). On August 29, 2017, full data server access was shared with Nilesh Patkar while using the alias "Niel Pro." Email of August 29, 2017 (Dkt. No. 59-12).

On January 26, 2018, based on concerns regarding Nilesh Patkar and the discovery of his alias, a formal engagement contract was signed between THOUGHTi. Kabir Decl., at 3 (Dkt. No. 59-2). Dr. Kabir signed the agreement as Chief Executive Office of The Essential Group Publishing LLC. Intellectual Property and Inventions Assignment Agreement (the "IP Agreement"), at 1 (Dkt. No. 59-9).

On July 23, 2013, Plaintiff filed U.S. Patent Application No. 13/948,246 ("the '246 Application"), titled "High Probability Differential Diagnoses Generator" and naming Azad Alamgir Kabir as the sole inventor. The '246 Application issued as the '051 Patent on January 3, 2017. **Exhibit 1**.[2]

On November 21, 2016, Plaintiff filed U.S. Patent Application No. 15/356,933 ("the '933 Application"), titled "High Probability Differential Diagnoses Generator and Smart Electronic Medical Record," as a continuation-in-part of the '246 Application. The '933 Application issued as the '865 Patent on April 30, 2024. **Exhibit 2**. The '865 patent claims priority to the '051 patent through its

---

[2]    Exhibits are attached to the accompanying Declaration of Steven McMahon Zeller.

continuation-in-part application lineage and shares a common specification and "protect[s] substantially similar core diagnostic logic." Plaintiff's TAC, at 2 (Dkt. No. 95).

In or about 2019, Plaintiff first observed what he perceived to be "striking" similarities between WebMD's Symptom Tracker and his patented technology, and suspected WebMD of "unauthorized database usage and patent claim infringement." Kabir Decl., at 4 (Dkt. No. 59-2). On April 21, 2025, Plaintiff filed this action against WebMD in the U.S. District Court, Middle District of Georgia, alleging infringement of the '865 Patent, trade secret misappropriation, and copyright infringement. (Dkt. No. 1). Plaintiff filed his Second Amended Complaint, adding defendant THOUGHTi Inc. on August 18, 2025. (Dkt. No. 34.) Following a court order to show cause regarding venue, the case was transferred to this Court on September 3, 2025. (Dkt. Nos. 53, 54, 56.) Plaintiff filed the TAC, adding infringement of the '051 Patent, on October 6, 2025. (Dkt. No. 95.)

The TAC alleges that WebMD's Symptom Checker tool "incorporates methods covered by" the Asserted Patents, but does not specify which, if any, claims are actually infringed. Plaintiff's TAC, at 7 (Dkt. No. 95). However, Plaintiff has presented two claim charts as exhibits to the TAC. In one, only independent claim 9 is compared to the Symptom Checker tool. Introduction to Claim Chart for US Patent 11,972,865 ("Cummins IP Claim Chart"), at 2-7 (Dkt. No. 59-21). In the other,

independent claim 9 and dependent claims 10 and 11 are compared to the Symptom Tracker tool. neropat Claim Chart Analysis US11972865B1 ("neropat Claim Chart"), at 6-9 (Dkt. No. 59-22). (Claims 9–11 of the '865 Patent are collectively referred to as the Asserted Claims.) While an allegedly infringed claim of the '051 Patent is not identified in either the TAC or its exhibits, claim 1 is the only independent method claim found therein. Ex. 1, claim 1.

## III.  **LEGAL STANDARDS**

A court must dismiss a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Complaints must allege facts "sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A plaintiff's bald assertions or legal conclusions will not suffice to survive a motion to dismiss." *Rearick v. Spanier*, 523 F. App'x 198, 199 (3d Cir. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Further, "unsupported conclusions and unwarranted inferences" are not to be accepted as true. *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).

In evaluating a motion to dismiss, "courts are not limited to the . . . complaint, but may also consider evidence 'integral to or explicitly relied upon' therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (citation omitted). This includes "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citation omitted). Moreover, "a court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the [patent] claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (citation omitted).

## IV.    <u>ARGUMENT</u>

The TAC should be dismissed because each of its three counts fails to state a claim. First, the Asserted Claims are invalid under 35 U.S.C. § 101 as interpreted by *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014), because they purport to claim the abstract idea of generating a differential diagnosis by collecting and comparing data. As a result, Count 1 of the TAC should be dismissed with prejudice. Additionally and separately, the allegations contained in the TAC fail to plausibly plead infringement of the '051 Patent (Count 1), infringement of a valid copyright (Count 2), or misappropriation of Plaintiff's trade secrets (Count 3). Accordingly, the TAC should be dismissed in its entirety.

A.    **Count 1 Fails to State a Claim for Patent Infringement Because the Asserted Patents Are Invalid Under 35 U.S.C. § 101.**

Whether a claim is patent-eligible under 35 U.S.C. § 101 is a question of law. *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1358 (Fed. Cir. 2020). Invalidation of patents on a Rule 12(b)(6) motion to dismiss is appropriate where "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). "In the § 101 context, 'the specification alone' may suffice to resolve the patent-eligibility inquiry." *WhitServe L.L.C. v. Donuts Inc.*, 809 F. App'x 929, 935 (Fed. Cir. 2020) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1356 (Fed. Cir. 2018)).

1.    **Subject Matter Eligibility Under *Alice*.**

Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. But the Supreme Court has long held that § 101 "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216 (citation omitted).

To determine whether a patent claims an ineligible abstract idea, courts employ a two-step test detailed in *Alice*. *See id.* at 217–18 (citing *Mayo Collaborative Servs.*

*v. Prometheus Labs., Inc.*, 566 U.S. 66, 77–78 (2012)). In step one, the court determines if the claims at issue are directed to an abstract idea or other excluded category. *Id.*; *see also Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021) ("[T]he claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." (alteration in original) (citation omitted)). To aid this inquiry, courts have found it "sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *LendingTree, LLC v. Zillow, Inc.*, 656 F. App'x 991, 995 (Fed. Cir. 2016) (citation omitted); *see also Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1182 (Fed. Cir. 2020) (collecting case examples of categories of abstract ideas). Even when claims involve technology, they are nevertheless abstract "'where the claims simply recite conventional actions in a generic way' without purporting to improve the underlying technology." *Universal Secure Registry*, 10 F.4th at 1357 (quoting *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019)).

If a claim is directed to an abstract idea, *Alice* step two searches the claim for an "'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible abstract idea] itself.'" *Alice*, 573 U.S. at 217–18 (quoting *Mayo*, 566 U.S. at 72–73). Transforming an abstract idea into a patent-eligible claim

"requires more than simply stating the abstract idea while adding the words 'apply it.'" *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 891 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 222). Rather, transformation requires "'additional features, which must be more than 'well-understood, routine, conventional activit[ies].'" *Id.* (alteration in original) (quoting *Alice*, 573 U.S. at 225). Likewise, limiting a claim to a particular technological environment is not enough to transform an abstract claim into an eligible invention. *See Alice*, 573 U.S. at 222–25.

## 2. Claim 9 of the '865 Patent is Representative of the Claims in Both Asserted Patents.

In applying *Alice*, it is well-settled that the eligibility of all claims of a patent may be determined based on an analysis of a representative claim. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Where multiple patents are asserted that share a common specification, courts routinely treat one claim as representative of all claims of the Asserted Patents for purposes of an eligibility analysis. *See, e.g.*, *Fast 101 Pty Ltd. v. Citigroup Inc.*, 424 F. Supp. 3d 385, 387–88 (D. Del. 2020) (treating single claim as representative of claims of multiple asserted patents sharing a common specification), *aff'd*, 834 F. App'x 591 (Fed. Cir. 2020).

Here, both of the Asserted Patents concern a method for performing an automated medical diagnosis of a patient. *See* Abstract, '051 Patent; Abstract, '865 Patent. Plaintiff himself alleges that "[b]oth patents share a common specification and protect substantially similar core diagnostic logic." Plaintiff's TAC at 2 (Dkt.

No. 95). Plaintiff goes as far as saying that the "core arguments supporting validity [of the '865 Patent] also apply to U.S. Patent No. 9,536,051 B1 due to their shared specification and structural overlap." *Id.* at 13.

By Plaintiff's own admission, the Asserted Patents rise and fall together because they claim the same underlying concept, an abstract method of generating a medical diagnosis. The language of the independent method claims in the Asserted Patents are very similar. *See* App. A (chart comparing language of each method claim). Although minor differences in wording exist, these differences do not change what the claims are "directed to" for purposes of the eligibility analysis. Each method claim is directed to the idea of providing a medical diagnosis based on the specific symptoms experienced by a patient.

Claim 9 of the '865 Patent, as the only specific claim asserted against WebMD, is representative of all the independent method claims, because each asserted claim is "substantially similar and linked to the same abstract idea" of providing a medical diagnosis based on the specific symptoms experienced by a patient. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (citation omitted). Any differences do not change the "focus" of the claims for purposes of the eligibility analysis.

### 3.    <u>Claim 9 of the '865 Patent is Directed to an Abstract Idea.</u>

The first step of the *Alice* analysis dictates that Claim 9 is directed to an abstract idea as it simply involves "collecting information, analyzing it, and displaying certain results." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). The claim recites a method of generating a diagnosis by "**collecting** . . . medical data from a patient," "**accessing** . . . differential diagnosis medical data tables," "**connecting** the . . . medical data with the . . . differential diagnosis medical data tables," "**isolating** all disease data common to said . . . differential diagnosis medical data tables," "**generating** a listing of said isolated common disease data," and "**arranging** said isolated common disease data . . . in a **ranked** order." '865 Patent, claim 9 (Ex. 2) (emphasis added). This process represents the fundamental mental steps that physicians have performed for centuries: gathering patient symptoms, comparing them against known disease patterns, identifying matching conditions, and ranking potential diagnoses by likelihood. The claim merely systematizes this age-old diagnostic reasoning process without adding any technological innovation. Plaintiff even admits in an exhibit to his complaint that the patent is "[r]ooted in expert physician logic" designed to address the problem of "how to systematize and scale the thought process to prevent diagnostic error." A Revolution in Clinical Reasoning and Diagnostic Precision (the

"Kabir Patent Statement"), at 1 (Dkt. No. 59-20). Plaintiff also describes his patented method as "mimic[king] the thought process of expert physicians." *Id.* at 2.

The focus of Claim 9 "is on selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis. That is all abstract." *SAP*, 898 F.3d at 1167. Likewise, the claim's step of ranking results, based on frequency of disease association and relative position, constitutes "analyzing information by 'steps people go through in their minds, or by mathematical algorithms' . . . [which] fall 'within the realm of abstract ideas.'" *United Servs. Auto. Ass'n v. PNC Bank N.A.*, 139 F.4th 1332, 1337 (Fed. Cir. 2025) (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016)). "[M]erely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis." *SAP*, 898 F.3d at 1167 (quoting *Elec. Power Grp.*, 830 F.3d at 1353).

Claim 9 of the '865 Patent is directed to the abstract idea of "mimic[king] the thought process of expert physicians" to make a diagnosis based on a patient's symptoms. Kabir Patent Statement, at 2 (Dkt. No. 59-20). There are no factual allegations to the contrary. Since the claim is representative of all independent method claims of the Asserted Patents, those other claims are also directed to an abstract idea.

### 4.    Claim 9 of the '865 Patent Fails Alice Step Two.

Under step two of Alice, Claim 9 lacks any inventive concept sufficient to transform this abstract idea into patent-eligible subject matter. Claim 9 does not even recite an inventive concept beyond the abstract idea of collecting medical data, analyzing it, and presenting a ranked medical diagnosis, or even that such method is performed on a computer. While Plaintiff asserts that his patents cover "a novel and concrete technological solution that introduces a new reasoning architecture to medicine," there is no inventive concept set forth in Claim 9 that adds to the abstract idea.

Even if Claim 9 could be interpreted as covering aspects of a novel database (which Plaintiff seems to suggest through various statements), it still would not be enough to transform the abstract idea into patent-eligible subject matter. *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1214 (Fed. Cir. 2025) ("We have also held the application of existing technology to a novel database does not create patent eligibility."), *petition for cert. filed*, No. 25-505 (Oct. 21, 2025). In *Recentive Analytics*, the Federal Circuit made clear that merely performing abstract ideas on common tools does not create patent eligibility:

> Finally, the claimed methods are not rendered patent eligible by the fact that (using existing machine learning technology) they perform a task previously undertaken by humans with greater speed and efficiency than could previously be achieved. We have consistently held, in the context of computer-assisted methods, that such claims are not made patent eligible under § 101 simply because they speed up human

activity. *See, e.g., Content Extraction* [*& Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*], 776 F.3d [1343,] 1347 [(Fed. Cir. 2014)]; *DealerTrack*[*, Inc. v. Huber*], 674 F.3d [1315,] 1333 [(Fed. Cir. 2012)]. Whether the issue is raised at step one or step two, the increased speed and efficiency resulting from use of computers (with no improved computer techniques) do not themselves create eligibility. *See, e.g., Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1363 (Fed. Cir. 2023) (rejecting argument that "humans could not mentally engage in the 'same claimed process' because they could not perform 'nanosecond comparisons' and aggregate 'result values with huge numbers of polls and members'") (internal citation omitted); *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) (holding claims abstract where "[t]he only improvements identified in the specification are generic speed and efficiency improvements inherent in applying the use of a computer to any task"); *compare McRo,* [*Inc. v. Bandai Namco Games America Inc.*], 837 F.3d [1299,] 1314-16 [(Fed. Cir. 2016)](finding eligibility of claims to use specific computer techniques different from those humans use on their own to produce natural-seeming lip motion for speech).

*Id.* at 1214 (7th alteration in original).

The specification of the '865 Patent confirms that Claim 9 is exactly the type of claim the Federal Circuit cautioned against as it merely automates well-known diagnostic reasoning. The specification explains that health care providers "generate at least 2-4 epidemiology-based hypotheses (i.e., rank-ordered hypotheses based on age-sex distribution of disease condition)" and that "rank ordering of the generated hypotheses is also very important for effective diagnostic decision making." '865 Patent col. 1, l. 51 – col. 2, l. 2. (Ex. 2). The specification further acknowledges that the ranking process "primarily depends on the epidemiological distribution of disease (determined by patient's age, sex, and clinical characteristics)," which

skilled "expert physicians . . . learn over the years . . . via clinical practice." *Id.* col. 2, ll. 2-8.

The specification also concedes that reference materials already exist to aid physicians in making medical diagnoses, noting that "[c]urrently, there are books that list all possible disease conditions a patient can have if a single sign or symptom or clinical finding is present," but "every disease is related to multiple signs or symptoms or clinical findings and a single sign, symptom or clinical finding is linked to a number of disease or differential diagnoses." *Id.* col. 2, ll. 10-14. The problem identified in the patents is not a lack of capability, but inefficiency: "[i]f someone wants to consider all the available differential diagnoses . . . during every patient encounter, the time and costs . . . would increase," leading to higher healthcare costs and risk of diagnostic error. *Id.* col. 2, ll. 16-22. However, "relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015).

Therefore, Claim 9 of the '865 patent is directed to patent-ineligible subject matter under 35 U.S.C. § 101 and contains no inventive concept. Since the claim is representative of all independent method claims of the Asserted Patents, those claims too are directed to patent-ineligible subject matter under 35 U.S.C. § 101 and contain no inventive concepts. Accordingly, because there are no factual allegations that

prevent resolving the eligibility question as a matter of law, Count 1 fails to allege a claim for patent infringement and should therefore be dismissed with prejudice.

### B.    Count 1 Fails to State a Claim for Infringement of the '051 Patent.

Plaintiff fails to state a claim for Patent infringement with regards to the '051 Patent because Plaintiff fails to sufficiently allege any factual allegations of patent infringement. "[A] plaintiff cannot assert a plausible claim for infringement under the Iqbal/Twombly standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). An adequate complaint needs to contain "some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."*AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024) (quoting *Bot M8*, 4 F.4th at 1353). This is because a complaint must give the defendant fair notice of what the infringement claim is and the grounds upon which it rests. *Id* at 39.

Here, Plaintiff merely states that "Defendant's 'Symptom Checker' tool incorporates methods covered by Plaintiff's . . . US 9,536,051 B1 (Exhibit B) without authorization." Plaintiff's TAC at 7 (Dkt. No. 95). However, Plaintiff does not identify, in any part of the TAC or in any of the exhibits referenced therein, which specific claim of the '051 Patent is alleged to be infringed, nor does he provide factual allegations mapping any element of any claim to features of the accused

system. Plaintiff does not even allege ownership of the '051 Patent. Instead, the Plaintiff offers only conclusory assertions of infringement and "expressly reserves the right to assert and demonstrate infringement under either or both patents as the factual record develops." Plaintiff's TAC at 3 (Dkt. No. 95). Such speculative, threadbare allegations are woefully insufficient to state a claim for relief. Thus, the '051 Patent infringement claim must be dismissed.

### C.    Count 2 of the TAC Fails to State a Claim for Copyright Infringement.

To sustain a claim for copyright infringement, a plaintiff must establish: "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002). Plaintiff fails to state a claim for copyright infringement because he has not alleged that he owns a copyright registration and he fails to adequately allege copying of any original elements of his alleged copyrighted work. Each of these alone offer a sufficient basis to dismiss Count 2.

### 1.    Plaintiff Has Not Alleged Ownership of a Copyright Registration.

Ownership of a valid copyright registration is a prerequisite for bringing a civil action for infringement of a copyrighted work. 17 U.S.C. § 411(a); *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019)

("[R]egistration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights . . . ."); *see also Goddard v. Interserver.net*, No. 25-cv-3883 (EP) (MAH), 2025 U.S. Dist. LEXIS 126438, at *5 (D.N.J. July 2, 2025) (noting that owning a copyright is "an essential element to a copyright infringement action" and that section 411 of the Copyright Act requires that a plaintiff must have a registered copyright before filing an infringement claim based upon that copyright).

Plaintiff's TAC is devoid of any allegation that Plaintiff owns a valid copyright registration, that any copyright registration exists, or any allegation that Plaintiff has even applied for a registration. Plaintiff asserts that he "owns copyrights in a proprietary medical database," and that the "compilation, structure, selection, coordination, and arrangement of this database constitute original works of authorship subject to copyright protection under U.S. law." Plaintiff's TAC, at 4, 8 (Dkt. No. 95). Plaintiff includes an exhibit entitled Declaration of Copyright Ownership, in which he, among other things, purports to "assert [his] full copyright ownership over this database and its underlying architecture." Kabir Copyright Decl. ¶ 8 (Dkt. No. 59-11). Yet nowhere does Plaintiff include an allegation that he owns a copyright registration, or that he or anyone else has even applied for one for his "proprietary medical database."

The failure to include any such allegations "is fatal to his copyright infringement claim." *Goddard*, 2025 U.S. Dist. LEXIS 126438, at *6 (dismissing claim for copyright infringement where plaintiff did not "clearly allege that a registered copyright *exist*[*ed*]") (second emphasis added). Accordingly, Plaintiff's Count 2 for copyright infringement must be dismissed.

### 2.    Plaintiff Has Not Sufficiently Alleged Copying of a Valid Copyright.

Plaintiff additionally fails to state a claim for copyright infringement because Plaintiff does not sufficiently allege unauthorized copying by WebMD of original elements of his work. *Dun & Bradstreet Software Servs.*, 307 F.3d at 206. To prove unauthorized copying, a plaintiff must show that the defendant (1) had access to the plaintiff's work, and (2) that "the original and allegedly infringing works share substantial similarities." *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203 (3d Cir. 2005). To succeed in such a claim, a plaintiff must be able to demonstrate to the Court that the substantial similarities are predicated on protectable elements of the original work. *Dam Things from Den. v. Russ Berrie & Co.*, 290 F.3d 548, 562 (3d Cir. 2002).

Plaintiff relies solely on the conclusory assertions "[o]n information and belief" that "THOUGHTi, Inc. subsequently transferred Plaintiff's copyrighted work to Defendant WebMD, LLC, which then incorporated substantial portions of that work." Plaintiff's TAC at 8 (Dkt. No. 95). The TAC is devoid of any specifics as to

what portions were allegedly copied by WebMD and whether those portions were protectible elements. The only hint of a comparison contained in the TAC is Plaintiff's allegation that in 2020, he "discovered WebMD's Symptom Checker incorporated strikingly similar functionality, logic flows, and clinical mappings, consistent with Plaintiff's patent and database." Plaintiff's TAC, at 4 (Dkt. No. 95). These elements, however, are not protectible under copyright law. *See JK Soft, Inc. v. Innoas, Inc.*, Civil Action No. 18-199 (WJM) (CLW), 2025 U.S. Dist. LEXIS 154798, at *7 (D.N.J. Aug. 11, 2025) (listing subjects excluded from copyright protection, including "any idea, procedure, process, system, method of operation, concept, principle, or discovery" (quoting *Pyrotechnics Mgmt., Inc. v XFX Pyrotechnics LLC*, 38 F.4th 331, 337 (3d Cir. 2022)).

Because Count 2 has no allegations of copying by WebMD of original and protectible elements of Plaintiff's alleged copyrighted work, it fails to state a claim and should be dismissed.

### D. Count 3 Fails to Allege a Valid Claim for Trade Secret Misappropriation.

To state a claim for trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), a plaintiff is required to allege "(1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret; (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce; and (3) the

misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret." *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 903-04 (3d Cir. 2021) (citations omitted). Count 3 fails because Plaintiff has not alleged ownership of any trade secret, has failed to sufficiently allege the reasonable measures to keep secret his alleged trade secrets, and has failed to adequately allege misappropriation of any trade secrets by WebMD.

### 1.    Plaintiff Has Not Sufficiently Pled Ownership of any Trade Secrets.

Under the DTSA, only the owner of a trade secret may bring a civil action. *Insulet Corp. v. EOFlow, Co.*, 104 F.4th 873, 880 (Fed. Cir. 2024). A trade secret owner is "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." 18 U.S.C. § 1839(4). Courts have determined ownership of a trade secret based on how they were developed and who controlled them. *Highland Consulting Grp., Inc. v. Soule*, 74 F.4th 1352, 1358 (11th Cir. 2023) (the court found the owner of the trade secret was the company and not the individual because the trade secrets were developed and controlled at the corporate level).

Here, Plaintiff alleges he "developed and owns a proprietary medical database, algorithms, and related methods (the "Doctor AI System")." Plaintiff's TAC at 9 (Dkt. No. 95). But Plaintiff's own pleadings and exhibits directly contradict this assertion. He admits that in 2017, "DDXRX.com hire[d] THOUGHTi Inc for a

contractual engagement under Upwork" and "granted [Nilesh Patkar] direct access to DDXRX.com's proprietary medical database and server." Kabir Decl., at 2 (Dkt. No. 59-2). Plaintiff's documentation further claims that "The Essential Group Publishing, LLC, dba DDXRX Software" …is the "owner of the patented system checker and *associated database*." neropat Claim Chart, at 10 (Dkt. No. 59-22) (emphasis added). Furthermore, it was The Essential Group Publishing entity, not Plaintiff individually, that entered into a non-disclosure agreement with Defendant THOUGHTi over the work on Plaintiff's database and algorithms. IP Agreement, at 1 (Dkt. No. 59-9). Plaintiff even executed the agreement in his capacity as Chief Executive Officer, confirming corporate ownership and control rather than individual rights. *Id*. at 10.

Such contradictions of ownership cannot plausibly show that Plaintiff is the owner of any of the alleged trade secrets. Even if there are any trade secrets, such trade secrets are owned by The Essential Group Publishing entity and not Plaintiff. Thus, the trade secret misappropriation claim must be dismissed.

### 2. Plaintiff's Allegations Contradict His Assertion of Reasonable Measures to Maintain Confidentiality of His Alleged Trade Secrets.

Plaintiff fails to state a claim for trade secret misappropriation because Plaintiff fails to sufficiently allege he took reasonable measures to keep the information secret. Under the DTSA, the owner of a trade secret is required to take

"reasonable measures to keep such information secret." *Inteliclear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 660 (9th Cir. 2020) (quoting 18 U.S.C. § 1839(3)). Plaintiff's TAC contains the conclusory allegation that he "undertook reasonable measures to maintain the secrecy of these trade secrets, including use of non-disclosure agreements, controlled access, password protections, and contractual restrictions placed on third-party contractors such as THOUGHTi, Inc." Plaintiff's TAC at 9 (Dkt. No. 95). But his "alleged reasonable measures" are directly contradicted by his allegations in the pleadings and exhibits.

First, Plaintiff admits that in November 2011 he engaged a software engineer in Bangladesh to assist in building his medical decision support software and database. Kabir Copyright Decl., at 1-2 (Dkt. No. 59-11). Yet Plaintiff does not allege that this engineer was ever bound by any non-disclosure agreement or other contractual obligation to maintain secrecy of the information he developed or accessed. In addition, Plaintiff claims he engaged Nilesh Patkar and Anupam Das of THOUGHTi, on August 29, 2017, through Upwork. Kabir Decl., at 2 (Dkt. No. 59-2). Plaintiff provided Nilesh Patkar (who Plaintiff believed was named "Niel Pro") with "full access to proprietary, copyrighted databases and confidential code."). *Id.* Plaintiff has not alleged that he had a confidentiality or non-disclosure agreement with Patkar and Das in August 2017, nor that they were under any obligation to maintain secrecy of the information they developed or accessed. It was not until

January 2018, about five months later, that Plaintiff discovered Nilesh Patkar's real name, and required THOUTGHi to sign a non-disclosure agreement. *Id.* at 3. Plaintiff has not alleged that the non-disclosure agreement is retroactive, nor is there such a provision in the agreement. IP Agreement (Dkt. No. 59-9). In other words, for nearly five months, Plaintiff knowingly provided contractors with unrestricted access to the core system without verifying the identity of one of them or requiring any confidentiality protections.

Plaintiff not only provided access to his database without a confidentiality agreement, but Plaintiff recklessly provided contractors with complete administrative control over his entire server infrastructure, including VPN credentials with pre-shared keys, root-level server access, WHM/cPanel administrative privileges, and even his personal login credentials, months before obtaining any confidentiality agreement. Email of August 29, 2017, at 1 (Dkt. No. 59-12). Such access went far beyond what was necessary for the contracted work and allowed contractors to exercise unfettered control over the entire system and any trade secrets.

These admitted facts, engaging developers without any confidentiality agreements, granting months of unrestricted access to an unknown individual using a false name, and furnishing full administrative credentials to a computer system without safeguards, are irreconcilable with the DTSA's requirement that a trade

secret owner take "reasonable measures" to maintain secrecy. *See, e.g.*, *Pauwels v. Deloitte LLP*, 83 F.4th 171, 182 (2d Cir. 2023) (finding that acknowledged disclosure of trade secrets to parties not under secrecy agreement undercut assertion of reasonable measures, supporting dismissal of complaint); *Turret Labs. USA, Inc. v. CargoSprint, LLC*, No. 21-952, 2022 U.S. App. LEXIS 6070, at *8-9 (2d Cir. Mar. 9, 2022) (affirming dismissal where the trade secret owner conveyed the software to third parties without executing confidentiality agreements despite other allegations of protective measures). Because Plaintiff's own allegations establish that no reasonable secrecy measures were taken, the trade secret misappropriation claim fails as a matter of law and should be dismissed with prejudice.

### 3.    Plaintiff Has Not Sufficiently Pled Misappropriation by WebMD.

A defendant misappropriates a trade secret when, among other things, it discloses or uses a trade secret of another, without express or implied consent, knowing that at the time of disclosure or use that the trade secret was acquired by improper means or under circumstances giving rise to a duty to maintain its secrecy or limit its use. *Oakwood Labs.*, 999 F.3d at 908; 18 U.S.C. § 1839(5).

Plaintiff alleges that "[o]n information and belief," WebMD "used [Defendant's proprietary database and methods] in developing and operating its Symptom Checker tool beginning around 2017-2018." Plaintiff's TAC at 10 (Dkt. No. 95). The only allegations of WebMD having access to Plaintiff's alleged trade

secrets is through Defendant THOUGHTi. *See id.* at 4 ("On information and belief, THOUGHTi transferred Plaintiff's proprietary database, code, and methods to WebMD"); *see also id.* at 5, 9.

Plaintiff's TAC contains no allegations that when WebMD allegedly used Plaintiff's trade secrets, it "knew or had reason to know" that THOUGHTi's knowledge of Plaintiff's trade secrets was derived from improper means or acquired under circumstances giving rise to a duty to maintain secrecy, as required under the DTSA. 18 U.S.C. § 1839(5)(B)(ii). Thus, even taking as true the rest of Plaintiff's allegations regarding WebMD's access and use of the alleged trade secrets, the TAC does not state a claim under the DTSA based on the lack of allegations regarding WebMD's knowledge. Thus, the trade secret misappropriation claim must be dismissed.

## V.   **CONCLUSION**

Because Plaintiff has failed to state a claim upon which relief can be granted, WebMD respectfully requests this Court dismiss Counts 1, 2, and 3 of Plaintiff's Complaint, and provide any further relief this Court deems appropriate. Because leave to amend would be futile, the Court should dismiss Counts 1, 2, and 3 with prejudice.

Dated: November 3, 2025

Respectfully submitted,

ELLIS GEORGE LLP


By:   s/Jeffrey A. Mitchell
       Jeffrey A. Mitchell
       Nicholas S. Pradaxay
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone: (212) 413-2600
Facsimile: (212) 413-2629
jmitchell@ellisgeorge.com
npradaxay@ellisgeorge.com

DYKEMA GOSSETT PLLC
Michael P. Adams (Admitted *pro hac vice*)
111 Congress Avenue, Suite 1800
Austin, Texas 78701
Telephone: (512) 703-6315
Facsimile: (512) 703-6399
madams@dykema.com

DYKEMA GOSSETT PLLC
Steven McMahon Zeller (Admitted *pro hac vice*)
10 S. Wacker Drive, Suite 2300
Chicago, Illinois 60606
Telephone: (312) 876-1700
Facsimile: (312) 876-1155
szeller@dykema.com

*Attorneys for Defendant WebMD LLC*

## APPENDIX A

| '865 Patent-Claim 1 | '865 Patent-Claim 9 | '051 Patent-Claim 1 |
|---|---|---|
| 1. A method for generating a high probability differential medical diagnosis comprising: | 9. A method of generating a high probability differential medical diagnosis comprising: | 1. A method for generating a high probability differential medical diagnosis comprising: |
| collecting a first medical clinical data from a patient; | collecting a first medical data from a patient; | **providing a selection means whereby a first medical clinical data of a patient may be selected** whereby said providing a selection means whereby a first medical clinical data of a patient may be selected comprises: illustrating a text box whereby a user can enter text; and automatically providing a selectable list of data for said user to select in response to said user entering at least one character of text into said text box; |
| collecting a second medical clinical data from the patient; | collecting a second medical data from the patient; | **providing a second selection means whereby a second medical clinical data of said patient may be selected** wherein said providing a second selection means whereby a second medical clinical data of said patient may be selected comprises: illustrating a second text box whereby a user can enter text; and automatically providing a second selectable list of data for said user to select in response to said user entering at least one character of text into said second text box; |
| linking said collected first and second medical clinical data with a differential | accessing master differential diagnosis medical data tables comprising a plurality | **comparing said first medical clinical data and said second medical clinical** |

| '865 Patent-Claim 1 | '865 Patent-Claim 9 | '051 Patent-Claim 1 |
|---|---|---|
| diagnosis medical database, whereby said differential diagnosis medical database includes disease data and medical clinical data related to said disease data; | of medical data and differential diagnosis data associated with said medical data; | **data to a medical database** whereby said medical database includes disease data and symptom data related to said disease data wherein said comparing said first medical clinical data and said second medical clinical data comprises: |
| comparing said collected first medical clinical data to said disease data in said differential diagnosis medical database, wherein said comparing said collected first medical clinical data comprises: | connecting the first medical data with the master differential diagnosis medical data tables; | comparing said first medical clinical data to said medical database; isolating all disease data linked to said first medical clinical data; arranging said isolated disease data linked to said first medical clinical data into a first grouping whereby said isolated disease data is arranged in a ranked list whereby more prevalent disease data is ranked ahead of less prevalent disease data whereby more life threatening disease data within said isolated disease data is ranked higher in said ranked list linked to said first medical clinical data than less life threatening disease data within said isolated disease data; |
| comparing said first medical clinical data to said differential diagnosis medical database; isolating all disease data common to said first medical clinical data; arranging said isolated disease data common to said first medical clinical data into a first grouping; and | connecting the second medical data with the master differential diagnosis medical data tables; | comparing said second medical clinical data to said medical database; isolating all disease data linked to said second medical clinical data; and arranging said isolated disease data linked to said second medical clinical data into a second grouping whereby said isolated disease data is arranged in a second ranked list whereby more prevalent disease data is ranked ahead of less prevalent disease data |

| '865 Patent-Claim 1 | '865 Patent-Claim 9 | '051 Patent-Claim 1 |
|---|---|---|
| | | whereby more life threatening disease data within said isolated disease data is ranked higher in said second ranked list linked to said second medical clinical data than less life threatening disease data within said isolated disease data; |
| comparing said collected second medical clinical data to said disease data in said differential diagnosis medical database, wherein said comparing said collected second medical clinical data comprises: | isolating all disease data common to said master differential diagnosis medical data tables associated with said first medical data and said second medical data; | **grouping disease data from said medical database in response to said comparing** wherein said grouping disease data from said medical database in response to said comparing comprises: comparing said first grouping of isolated disease data to said second grouping of isolated disease data; and isolating disease data common to said first grouping and said second grouping; |
| comparing said second collected medical clinical data to said differential diagnosis medical database; isolating all disease data common to said second medical clinical data; arranging said isolated disease data common to said second medical clinical data into a second grouping; isolating all disease data in said differential diagnosis medical database common to said first medical clinical data and said second medical clinical data; generating a listing of said isolated common disease data; | generating a listing of said isolated common disease data associated with said first medical data and said second medical data; and | illustrating a listing of said ranked grouped disease data; |

| '865 Patent-Claim 1 | '865 Patent-Claim 9 | '051 Patent-Claim 1 |
|---|---|---|
| comparing said first grouping of isolated disease data to said second grouping of isolated disease data; isolating disease data common to said first grouping and said second grouping; ranking said isolated disease data common to said first grouping and said second grouping into a third ranked list; and | | |
| ranking said isolated common disease data in the third ranked list, wherein the position in the third ranked list is based upon:<br>the number of times said disease data is associated with said first medical data and said second medical data followed by the relative ranked position of said isolated disease data associated with said first medical data. | **arranging said isolated common disease data in said generated listing in a ranked order**, whereby the position in said ranked listing is based upon the number of times said disease data is associated with said first medical data and said second medical data followed by the relative ranked position of said isolated disease data associated with said first medical data. | ranking said grouped disease data; |
| | | providing a third selection means whereby a third medical clinical data of a patient may be selected. |

4

# APPENDIX B

## List of Cited Exhibits

| Exhibit Name | Dkt. No. |
| --- | --- |
| Declaration of Dr. Azad A. Kabir in Support of Second Amended Complaint (the "Kabir Declaration") | 59-2 |
| Intellectual Property and Inventions Assignment Agreement | 59-9 |
| Declaration of Copyright Ownership by Azad Kabir (the "Kabir Copyright Declaration") | 59-11 |
| Email of August 29, 2017. | 59-12 |
| A Revolution in Clinical Reasoning and Diagnostic Precision (the "Kabir Patent Statement") | 59-20 |
| Claim Chart Analysis [of the '865 Patent] by Patrick Cummins | 59-21 |
| neropat Claim Chart Analysis US11972865B1 ("neropat Claim Chart") | 59-22 |