NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| AZAD ALAMGIR KABIR,<br><br>      Plaintiff,<br><br>      v.<br><br>WEBMD LLC *et al.*,<br><br>      Defendants. | No. 25cv15207 (EP) (JSA)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Azad Alamgir Kabir proceeds *pro se*[1] and brings patent infringement claims, copyright infringement claims, and trade secret misappropriation claims against WebMD LLC ("WebMD"), and copyright infringement and trade secret misappropriation claims against THOUGHTi, Inc. ("THOUGHTi") and John Doe 1.  D.E. 95 ("Third Amended Complaint" or "TAC").  Both THOUGHTi and WebMD filed motions seeking to dismiss Kabir's claims.

THOUGHTi moved to dismiss Counts Two and Three of the TAC pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim.  D.E. 104-1 ("THOUGHTi's Motion" or "T. Mot.").[2]  Kabir failed to oppose THOUGHTi's Motion.[3]  THOUGHTi nevertheless replied.  D.E. 172 ("THOUGHTi's Reply").

---

[1] Kabir brings three counts against Defendants: Count One (Patent Infringement, 35 U.S.C. § 271); Count Two (Copyright Infringement, 17 U.S.C. § 501 *et seq.*); and Count Three (Trade Secret Misappropriation, Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA")).

[2] THOUGHTi filed its notice of motion at D.E. 104.  For ease of reference, the Court will refer to THOUGHTi's memoranda of law filed at D.E. 104-1 as its Motion.

[3] After Kabir initially filed an overlength opposition (over 100 pages), the Court instructed him to refile.  *See* D.E. 117.  Kabir then filed another overlength opposition (over 70 pages) which included hallucinated citations.  *See* D.Es. 137–139.  The Court again instructed Kabir to file a proper-length opposition and warned him that further use of hallucinated citations may result in

WebMD moved to dismiss Counts One, Two, and Three pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  D.E. 105-4 ("WebMD's Motion" or "W. Mot.").[4] Kabir opposed.  D.E. 169 ("Opposition" or "Opp'n").[5]  WebMD replied.  D.E. 174 ("WebMD's Reply").

The Court decides THOUGHTi's Motion and WebMD's Motion (together, the "Motions") without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the reasons set forth below, the Court will **GRANT** the Motions.

## I.    BACKGROUND

### A.    Factual Background

#### 1.    *The Asserted Patents*

Kabir is the owner of U.S. Patent No. 11,972,865 (the "'865 Patent") and U.S. Patent No. 9,536,051 (the "'051 Patent") (collectively, the "Asserted Patents").  TAC ¶¶ 3–4A, 8.  The Asserted Patents share a common specification.  *Id.* ¶ 4A.  The claims in the Asserted Patents are directed to methods that map symptoms to associated diseases and then generate a ranked list

---

sanctions.  *Id.*  Kabir filed another overlength opposition.  *See* D.E. 141.  The Court then instructed Kabir that it would permit him one more opportunity to refile.  *Id.*  After receiving several extensions, *see* D.Es. 150, 157, Kabir filed an opposition containing hallucinated citations.  *See* D.E. 178.  The Court then struck Kabir's opposition for his repeated failure to comply with Court orders.  *Id.*

[4] WebMD filed its notice of motion at D.E. 105.  For ease of reference, the Court will refer to WebMD's memorandum of law filed at D.E. 105-4 as its Motion.

[5] Kabir similarly struggled to file a compliant opposition to WebMD's Motion, *see supra* n.3, but was ultimately able to do so within the timeframe provided by the Court.

(based on probability) of diagnoses.  *Id.* ¶ 4B.  Claim 9 of the '865 Patent is representative of the Asserted Patents.[6]  Claim 9 of the '865 Patent recites:

> A method of generating a high probability differential medical diagnosis comprising:
>> collecting a first medical data from a patient;
>> collecting a second medical data from the patient;
>> accessing master differential diagnosis medical data tables comprising a plurality of medical data and differential diagnosis data associated with said medical data;
>> connecting the first medical data with the master differential diagnosis medical data tables;
>> connecting the second medical data with the master differential diagnosis medical data tables;
>> isolating all disease data common to said master differential diagnosis medical data tables associated with said first medical data and said second medical data;
>> generating a listing of said isolated common disease data associated with said first medical data and said second medical data; and
>> arranging said isolated common disease data in said generated listing in a ranked order, whereby the position in said ranked listing is based upon the number of times said disease data is associated with said first medical data and said second medical data followed by the relative ranked position of said isolated disease data associated with said first medical data.

The Asserted Patents provide examples of the claimed methods.  Figure 3 of the Asserted Patents indicates how a user practicing the claimed method may identify chest pain and shortness of breath as a patient's first and second medical data.  For example, using a table containing association data between medical symptoms and diagnoses, the claimed methods would identify which diagnoses are associated with the symptoms (1) chest pain and (2) shortness of breath.  The claimed methods would then identify diagnoses that are associated in common with chest pain and shortness of breath and then list those diagnoses in an order based on strength of association.  In

---

[6] Kabir does not allege infringement of any *specific* claim from either of the Asserted Patents. WebMD accordingly treats Claim 9 of the '865 Patent as representative and Kabir does not object. *See* W. Mot. at 9–10; Opp'n at 9 (conceding another claim's equivalence to Claim 9 of the '865 Patent).

the example provided by the Asserted Patents in Figure 3, myocardial ischemia may be listed first on such a ranked list.



FIG. 3

Asserted Patents, Fig. 3.

Kabir alleges that WebMD's "Symptom Checker" tool, which generates lists of potential diagnoses based on symptom inputs, incorporates the functionality, logic, and clinical mapping, is claimed by the Asserted Patents.  TAC ¶¶ 14, 18B.  According to Kabir, the Symptom Checker tool's ability to generate tiered lists of diagnoses, based upon associations between symptoms and diseases, is a function that necessarily falls within the scope of the Asserted Patents.  *Id.*

4

### 2.    *The proprietary database*

Between 2011 and 2024, Kabir developed a proprietary database containing over 2,200 symptoms that he has associated with over 15,000 diagnoses.  *Id.* ¶ 9.  At some point in 2017, a company, "DDxRx," engaged THOUGHTi to connect Kabir's proprietary system to an electronic medical recordkeeping system.  *Id.* ¶ 10; D.E. 101-1 ("Timeline") at 2.[7]  Kabir appears to be associated with DDxRx but it is not clear from Kabir's Third Amended Complaint what his association is.[8]  *See* TAC at 12 (signature page providing Kabir's email as "azad.kabir@ddxrx.com").

Kabir, apparently on behalf of DDxRx, provided a THOUGHTi contractor, Nilesh Patkar, with access to the proprietary database in August 2017.[9]  Timeline at 2.  After providing Patkar with access in 2017, Kabir asked Patkar to sign a non-disclosure agreement in 2018.  *Id.* at 3.  Patkar and other THOUGHTi workers employed the knowledge and materials derived from use of Kabir's proprietary database to support improvements to WebMD's Symptom Checker tool at some point between 2017 and 2018.  *Id.* ¶ 13.  Kabir alleges that WebMD generated $700 million annually by (1) infringing his patents and copyright and (2) misappropriating his trade secrets.  *Id.* ¶ 17.

---

[7] Kabir submitted exhibits with his Third Amended Complaint.  Those Exhibits exist at D.E. 101.

[8] Kabir submits documents indicating that he owns about eighty percent of the companies "Doctor AI LLC" and "Essential Group Publishing LLC."  D.E. 159-1 at 23.  It is not clear if "DDxRx" is associated with those companies or if it is a different company.

[9] Kabir's allegations suggest that he owned the trade secret database at the time of the alleged misappropriation.  *See* TAC ¶ 23.  After WebMD pointed out that Kabir's Timeline suggests otherwise, W. Mot. at 21–22, Kabir filed a copy of an agreement purporting to assign ownership of the trade secrets, copyrights, and associated intellectual property over the database from companies "Doctor AI LLC" and "Essential Group Publishing LLC" to Kabir as of November 4, 2025, D.E. 159-1.

**B.    Procedural History**

Kabir initially filed this action in the United States District Court for the Middle District of Georgia on April 21, 2025.  D.E. 1.  Kabir then filed a first amended complaint on May 15, 2025.  D.E. 6.  On July 31, 2025, Kabir moved for an emergency injunction against THOUGHTi, which the Hon. Clay D. Land, U.S.D.J., denied.  D.Es. 16 & 18.  Kabir then filed a second amended complaint, bringing claims against both WebMD and THOUGHTi on August 18, 2025.  D.E. 34.  After WebMD objected to venue, D.E. 17, Judge Land ordered Kabir to show cause as to why the action should not be transferred to the District of New Jersey, D.E. 53.  Kabir consented to transfer, and this action was then transferred to the Undersigned on September 3, 2025.  D.E. 56.

Since the action was transferred to the Undersigned, Kabir has filed numerous motions seeking emergent relief.  *See, e.g.*, D.Es. 16, 17, 28.  He has also attempted to submit, for this Court's consideration, files that cannot be docketed.  As detailed in a previous memorandum order revoking Kabir's access to this Court's alternate document submission ("ADS") system, D.E. 192, Kabir's many improper filings have burdened this Court's filing system and rendered the docket in this action especially disordered and difficult to follow.  The Court has nevertheless considered Kabir's relevant filings.

WebMD and THOUGHTi filed their Motions on November 3, 2025.  *See* D.Es. 104 & 105.  After numerous unsuccessful attempts to oppose the Motions, *see* D.Es. 112–13, 115, 117, 121–22, 125–27, 137–38, 141, 147, 150, 155, 157, Kabir filed a compliant opposition to WebMD's Motion on January 16, 2026.  Opp'n; *see supra* n.5.  WebMD filed its reply on January 20, 2026.  WebMD's Reply.  Despite this Court's repeated extensions permitting Kabir to file an opposition to THOUGHTi's Motion that complied with this District's Local Civil Rules on page limitations and bar against hallucinated citations, Kabir was ultimately unable to oppose THOUGHTi's

Motion.  D.E. 178; *see supra* n.3.  The Court nevertheless permitted THOUGHTi to submit a reply on January 19, 2026.  THOUGHTi's Reply.

Since the parties completed briefing, Kabir has improperly attempted to continue supplementing the record.  *See, e.g.*, D.Es. 185 (seeking leave to file sur-replies) and 187 (denying leave to file sur-replies).  In addition to his attempts to introduce new facts after the completion of briefing, Kabir also seeks leave to file a Fourth Amended Complaint.  D.E. 196.  Because amendment appears futile for at least some of Kabir's claims, the Court decides the pending Motions before considering whether Kabir may obtain leave to amend.  *See infra* Sections II–III. The Court resolves the pending Motions below.

## II.    THOUGHTi's MOTION

THOUGHTi moves to dismiss Kabir's claims pursuant to Rule 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim.  Because Kabir's allegations do not support the exercise of personal jurisdiction over THOUGHTi, this Court will **GRANT** THOUGHTi's Motion and **DISMISS** THOUGHTi from this action.

### A.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 4(k), a district court may exercise personal jurisdiction according to the law of the forum state where it sits.  *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007).  New Jersey law permits the exercise of personal jurisdiction coextensive with the Due Process Clause of the United States Constitution.  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. Rule 4:4-4(c)).  Therefore, so long as a defendant has "certain minimum contacts with [New Jersey]" and "the maintenance of the suit does not offend traditional notions of fair play and substantial justice," the defendant

may be subject to suit. *O'Connor*, 496 F.3d at 316–17 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).[10]

There are two types of personal jurisdiction: general and specific. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352 (2021). General jurisdiction applies to all claims against a defendant when that defendant is "essentially at home." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction applies only to claims against a defendant that relate to its contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)).

To exercise specific jurisdiction over a nonresident defendant, courts must analyze the relationship between the defendant's contacts with the forum and with the plaintiff's claims. *Ford*, 592 U.S. at 359. In analyzing that relationship, courts look at two factors. *O'Conno*r, 496 F.3d at 318–19; *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021). *First*, whether the defendant has purposefully availed itself of the forum state. *Ford*, 592 U.S. at 351. *Second*, whether "the plaintiff's claims 'arise out of or relate to the defendant's contacts' with the forum." *Id.* (quoting *Bristol-Myers*, 582 U.S. at 262). "In other words," the first two prongs require "'an affiliation between the forum and the underlying controversy, principally an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers*,

---

[10] In *O'Connor*, the Third Circuit evaluated whether a court could exercise personal jurisdiction pursuant to Pennsylvania law. 496 F.3d at 316. Like New Jersey, Pennsylvania's long-arm statute is coextensive with the Due Process Clause of the United States Constitution. *See id.* Therefore, the Third Circuit's approach in *O'Connor* applies to the exercise of personal jurisdiction under New Jersey law too.

582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919).  Both factors must be met.  *Ford*, 592 U.S. at 351.

In addition to analyzing the above two factors, the exercise of jurisdiction over the defendant must 'comport with traditional notions of fair play and substantial justice' such that 'the defendant should reasonably anticipate being haled into court in that forum.'" *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003)).

Plaintiffs bear the burden of demonstrating facts that support a court's exercise of personal jurisdiction at the motion to dismiss stage.  *Toys "R" Us*, 318 F.3d at 456.  At this stage, a district court must construe disputed facts in favor of the plaintiff and "[w]here the district court does not hold an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction."  *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010).  When a plaintiff does "suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the nonresident defendant] and the forum state,'" courts should deny the defendant's motion to dismiss.  *Toys "R" Us*, 318 F.3d at 456 (quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

### B.    There is No Personal Jurisdiction Over THOUGHTi

Kabir alleges that this Court may exercise jurisdiction over THOUGHTi because THOUGHTi "purposefully directed activities into this District by providing services to WebMD that relied on Plaintiff's intellectual property."  TAC ¶ 7.  As explained below, these allegations do not permit this Court to exercise personal jurisdiction over THOUGHTi.  The Court will accordingly **GRANT** THOUGHTi's Motion and **DISMISS** THOUGHTi from this action ***without prejudice***.

9

*1.     Kabir's allegations do not support exercising general personal jurisdiction*

Courts may exercise general personal jurisdiction over a corporate defendant when the corporate defendant is headquartered in the forum state, incorporated in the forum state, or when the corporate defendant's "continuous corporate operations within [the forum] state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Goodyear*, 564 U.S. at 919 (quoting *Int'l Shoe*, 326 U.S. at 318).   Kabir's allegations provide no basis for the Court to infer that THOUGHTi is headquartered, incorporated, or has any "continuous corporate operations" within New Jersey. This Court cannot, therefore, exercise general personal jurisdiction over THOUGHTi.

*2.     Kabir's allegations do not support exercising specific personal jurisdiction*

The exercise of specific jurisdiction requires "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws." *Goodyear*, 564 U.S. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).   Kabir alleges that THOUGHTi purposefully directed its activities to this forum state, TAC ¶ **7,** but neither explains what those activities were, where they took place, how they were directed at this forum, or how they invoked the benefits and protections of this forum's laws.   Such allegations amount to no more than bare legal conclusions that this Court cannot reflexively construe as true. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).   Kabir therefore also fails to provide a basis upon which this Court may exercise specific personal jurisdiction over THOUGHTi.

It is Kabir's burden to justify the exercise of personal jurisdiction over THOUGHTi. *Mellon Bank*, 960 F.2d at 1227.  Having failed to do so, this Court must **GRANT** THOUGHTi's Motion and **DISMISS** it from this action ***without prejudice***.[11]

### III.    WEBMD'S MOTION

WebMD moves to dismiss Kabir's claims pursuant to Rule 12(b)(6) for failure to state a claim.  Because Kabir states no plausible claim against WebMD, the Court will **GRANT** WebMD's Motion as to Counts One, Two, and Three.  The Court will **DISMISS** Counts One, Two, and Three ***without prejudice***.

#### A.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled factual allegations as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  Courts may not consider "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

To survive a Rule 12(b)(6) challenge, a plaintiff's claims must be facially plausible, meaning that "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[11] Because Kabir fails to establish personal jurisdiction over THOUGHTi, the Court does not reach the merits of THOUGHTi's Rule 12(b)(6) arguments. *See Myers v. Berry*, No. 17-4417, 2018 WL 1904197, at *2 (D.N.J. Apr. 20, 2018)

11

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Although there is no "probability requirement," a plaintiff's claims must do more than present "a sheer possibility that a defendant has acted unlawfully."  *Id.*  The allegations must include "more than labels and conclusions." *Twombly*, 550 U.S. at 555.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.

**B.      The Court Will Not Consider Materials Outside Pleadings**

As a preliminary matter, the Court notes that for purposes of resolving a motion to dismiss for failure to state a claim, Federal Rule of Civil Procedure 12(d) does not generally permit consideration of materials outside of the pleadings.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  Ignoring the Federal Rules of Civil Procedure (again), Kabir nevertheless cites numerous filings that: (1) he submitted prior to his Third Amended Complaint (filed on October 9, 2025) and which are not referenced or incorporated by his Third Amended Complaint; (2) do not appear to exist on the docket; and/or (3) he submitted *after* he filed his Third Amended Complaint.  *See, e.g.*, Opp'n at 11 (citing D.E. 107, a "254-page Patent Validity Analysis" Kabir filed on November 21, 2025), and 29 (citing "Exhibits 28, 29, 90, and 91" none of which are referenced by the Third Amended Complaint); TAC at 13 (citing "Exhibit 32" which was purportedly filed under seal, but which appears nowhere on the docket).

In order to circumvent the page limits imposed by this District's Local Civil Rules, Kabir also attempts to incorporate about twenty additional pages of argument from one of his stricken

oppositions to THOUGHTi's Motion into his Opposition to WebMD's Motion. *See, e.g.*, Opp'n at 18–20 ("To avoid repetition and page limits, Plaintiff refers the Court to Plaintiff's Opposition to Thoughti's Motion to Dismiss (ECF 104) . . . ."). As Kabir has been repeatedly told, he must comply with this District's Local Civil Rules and the Federal Rules of Civil Procedure. *See, e.g.*, D.Es. 110, 157, 178. The Court will not consider arguments that Kabir failed to make *within* his Opposition.

Given the above-described improprieties, many materials that Kabir cites are either unavailable to the Court or extrinsic to Kabir's pleadings. They therefore cannot be considered by the Court to resolve the plausibility of Kabir's pleadings. *See In re Burlington*, 114 F.3d at 1426 ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."); *see also, e.g.*, *Par Pharm., Inc. v. Hospira, Inc.*, No. 17-944, 2018 WL 3343238, at *2 (D. Del. May 11, 2018) (declining to consider a patent's file history on a motion to dismiss because it was not referenced by the pleadings); *Cima Labs, Inc. v. Actavis Grp. HF*, No. 07-893, 2007 WL 1672229, at *4 (D.N.J. June 7, 2007) (declining to consider patentee's response to the Patent and Trademark Office because it is "not integral to or explicitly relied upon in the [pleadings]"). The Court is therefore unable to consider many of the documents Kabir references in his Opposition.

### C.    Kabir Fails to State a Claim

#### 1.    *Kabir's patent infringement claim (Count One)*

WebMD moves to dismiss Count One of Kabir's Third Amended Complaint on two grounds. First, WebMD contends that the Asserted Patents claim are ineligible subject matter in violation of 35 U.S.C. § 101 and are therefore invalid. W. Mot. at 7–13. Second, WebMD contends that Kabir has not plausibly stated a claim for patent infringement. W. Mot. at 16.

Because there are myriad problems with the sufficiency of Kabir's patent infringement claim, the Court will **GRANT** WebMD's Motion with respect to Count One and **DISMISS** Count One *without prejudice*.

### i.    Kabir does not plead infringement of any claim

One problem with Kabir's patent infringement claim is that he identifies no specific claim nor any specific claim language that WebMD allegedly infringes.[12]  Indeed, Count One merely states that WebMD's "'Symptom Checker' tool incorporates methods covered by Plaintiff's U.S. Patent No. US 11,972,865 B1 and US 9,536,051 B1 (Exhibit B) without authorization."  TAC ¶ 21.II.  This conclusory allegation is insufficient.

Kabir must articulate facts that explain why and how it is plausible that WebMD's Symptom Checker tool infringes his patents.  *See Robern Inc. v. Glasscrafters, Inc.*, 206 F. Supp. 3d 1005, 1011–12 (D.N.J. 2016) (holding that plaintiff needed to include detailed allegations regarding why specifically the defendant infringed on each patent to satisfy the "plausibility standard").  Pleading in the Third Circuit requires more than "a blanket assertion of entitlement to relief." *Phillips*, 515 F.3d at 232.  It is not enough to, in conclusory fashion, merely state that some product infringes.  *See, e.g.*, *NovaPlast Corp. v. Inplant, LLC*, No. 20-7396, (D.N.J. Feb. 3, 2021) (dismissing patent infringement claim because "the Complaint fails to allege factually that each and every element of at least one claim is met"); *see also Batkinoff v. Church & Dwight Co., Inc.*, 2020 WL 1527957, at *8 (Mar. 31, 2020) (explaining that a "complaint must allege that the accused product infringes on 'each and every element of at least [one] claim' of the plaintiff's

---

[12] Kabir's Third Amended Complaint cites to a "timeline," which cites to "Exhibit 28" and "Exhibit 29," which both purport to "ma[p] [WebMD's] 'Symptom Checker' tool directly to the patented claims in the ['865 Patent]."  *See* D.E. 101-1 at 7.  But Exhibits 28 and 29 are not attached to Kabir's Timeline and as far as the Court can find, appear nowhere on the docket.  *See* Dkt.

patents" (quoting *Disc Disease Sols. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018))).

Kabir must do more within his pleadings to state a claim.

The only information Kabir provides within his pleadings is that the outputs of WebMD's tool appears to rely on "backend logic" to rank possible diagnoses based on "symptom-to-condition" scoring. TAC ¶ 18B. According to Kabir, these kinds of outputs demonstrate "functionality falling within the scope of [his] patent claims." *Id.* Yet, the terms Kabir invokes appear nowhere in any claims within the Asserted Patents. It is therefore unclear what Kabir alleges infringement of. For these reasons alone, Count One fails.

ii.    Kabir's claims appear ineligible under 35 U.S.C. § 101

A second and more fundamental problem with Kabir's patent claim is that the claims appears directed to patent-ineligible subject matter under 35 U.S.C. § 101. Patents may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. There is one long-standing exception: "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 70 (2012)).

At the motion to dismiss stage, courts may dismiss patent infringement claims when "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shares Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018); *see Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1347 (Fed. Cir. 2016) ("Courts may . . . dispose of patent-infringement claims under § 101 whenever procedurally appropriate.").

15

To resolve this eligibility question, the Supreme Court has set forth a two-step analytical framework. *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 77–78 (2012). At step one, courts must ask whether the claims at issue are directed to a patent-ineligible concept, such as an abstract idea. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) (citing *Mayo*, 566 U.S. at 77–78). If so, courts must proceed to step two and ask whether the elements of each claim individually, or in combination, "transform the nature of the claim" into patent-eligible subject matter. *Id.* (citing *Mayo*, 566 U.S. at 78). To survive § 101's bar, the patent claims must "in practice amoun[t] to significantly more than a patent upon the ineligible concept itself." *Id.* (quoting *Mayo*, 566 U.S. at 73).

For purposes of the inquiry under § 101, the Court will treat Claim 9 of the '865 Patent as representative of the claims of the Asserted Patents because: (1) Kabir references Claims 9–11 in a document he cites to in the Third Amended Complaint, *see* D.E. 59-22; (2) WebMD treats Claim 9 of the '865 Patent as representative, *see* W. Mot. at 4; and (3) Kabir does not object to treating Claim 9 of the '865 Patent as representative, Opp'n at 11–13.[13]

### a.    *Alice/Mayo* Step One

"The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the [§ 101] inquiry" under *Alice* and *Mayo*. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 217). Generally, courts "compare the claims at issue to those claims already found to be directed

---

[13] Kabir contends that because he provides a "254-page Patent Validity Analysis (updated on November 9th, Exhibit 32.2 (See ECF 107-1) filing . . . confirming the patent's novelty and enforceability," "nothing is more required" at the pleading stage. Opp'n at 11. But Kabir did not provide this "254-page Patent Validity Analysis" with his Third Amended Complaint. Indeed, he did not provide it until *after* WebMD and THOUGHTi filed their Motions. D.E. 107-1. Nor does any earlier version of this analysis (purportedly filed as "Exhibit 32") exist anywhere on the docket. There is nothing the Court can therefore consider. *See supra* Section III.B.

16

to an abstract idea in previous cases." *Id.* The claims at issue here are directed to methods of collecting, comparing, and ranking data. The Court therefore compares them to claims analyzed by the Federal Circuit which involve similar methods directed to collecting and analyzing data.

In *Electric Power Group, LLC v. Alstom S.A.*, the Federal Circuit examined claims directed to methods for "real-time performance monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results." 830 F.3d 1350, 1352 (Fed. Cir. 2016). Affirming the principle that information is intangible and unpatentable, the Federal Circuit explained that the claims were directed to an abstract idea at step one because "[t]he advance [the applicant] purport[s] to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions." *Id.* (first citing *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 451 n.12 (2007), then citing *Bayer AG v. Housey Pharm., Inc.*, 340 F.3d 1367, 1372 (Fed. Cir. 2003)).

Subsequent Federal Circuit cases have similarly found claims directed to an abstract idea at step one when they cover methods of manipulating and presenting data. *See, e.g.*, *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024) ("We have explained that the steps of obtaining, manipulating, and displaying data, particularly when claimed at a high level of generality, are abstract concepts."); *iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 F. App'x 534, 536 (Fed. Cir. 2021) ("We have routinely held that claims directed to gathering and processing data are directed to an abstract idea."); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018) (finding claims directed "a physical-realm improvement but an improvement in wholly abstract ideas—the selection and mathematical analysis of information, followed by reporting or display of the results" ineligible at step one); *Digitech Image Techs., LLC v. Elecs. for Imaging,*

*Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) (finding claims directed to gathering and organizing information ineligible under § 101).

In contrast, the Federal Circuit held in *Enfish*, that claims directed to "a specific type of data structure designed to improve the way a computer stores and retrieves data in memory," were not ineligible at step one. 822 F.3d at 1339. There, the claims survived step one because they were directed to an improvement in computer functionality, rather than directed to the use of a computer as a tool to execute an abstract idea. *Elec. Power Grp.*, 830 F.3d at 1354 (distinguishing *Enfish*, 822 F.3d at 1335–36).

Here, the Asserted Patents are directed to methods of gathering medical data from patients, analyzing potential diagnoses based on the identified medical data and correlative strength, and then presenting the results. Compared to *Electric Power*, Kabir's claims appear directed to an ineligible concept at step one. Indeed, Kabir himself describes the Asserted Patents as covering the "core logic involving symptom-to-disease mapping and ranked diagnostic outputs." TAC ¶ 4B. And in Opposition, he contends that the Asserted Patents cover the process of "collect[ing] patient symptoms, transmit[ting] them to a database, and return[ing] an ordered list of potential conditions." Opp'n at 17. Kabir additionally argues that "[a]ny system that attempts to rank differential diagnoses necessarily practices the patented method[s], because there is no alternative approach outside the claimed invention when using symptom-disease mapping." *Id.* at 17–18.

But "analyzing information by steps people go through in their minds, or by mathematical algorithms, without more" falls "within the abstract-idea category." *Elec. Power*, 830 F.3d at 1353; *see Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1214 (Fed. Cir. 2025) ("[T]he claimed methods are not rendered patent eligible by the fact that (using machine learning technology) they perform a task previously undertaken by humans with greater speed and

efficiency than could previously be achieved."). Kabir argues that "no human brain can perform [the claimed] exhaustive techniques," Opp'n at 12, but the Asserted Patents explain that healthcare providers routinely "generate at least 2–4 epidemiology-based hypotheses (i.e., rank-ordered hypotheses based on [correlative factors])," '865 Patent at 1:51–55. It therefore appears—according to the Asserted Patents themselves—that the claimed methods merely perform, at a larger scale, the logical steps that healthcare providers have always performed. Accordingly, the claimed methods are directed to an abstract idea at step one of *Alice/Mayo*.

### b.    *Alice/Mayo* Step Two

Following a determination that claims are directed to an abstract idea, courts must next examine whether the claims contain "'an inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 221 (quoting *Mayo*, 566 U.S. at 77). Claims that are no "more than a drafting effort designed to monopolize the [abstract idea]" do not survive step two of the § 101 inquiry under *Alice/Mayo*. *Id.* Nor can claims directed to an abstract idea survive step two if they amount to a mere instruction to "implement or apply the abstract idea on a computer." *Bascom*, 827 F.3d at 1349 (citing *Alice*, 574 U.S. at 222).

The Federal Circuit agreed that "there is a critical difference between patenting a particular concrete solution to a problem and attempting to patent the abstract idea of a solution to the problem in general." *Elec. Power*, 830 F.3d at 1356. Here, Kabir contends that any system that ranks diagnoses "necessarily practices the patented method[s]" because mapping diagnoses to symptoms cannot be accomplished otherwise. Opp'n at 17–18. It therefore appears that Kabir attempts to monopolize every iteration of gathering data on patient symptoms, identifying diagnoses associated with those patient symptoms, and generating an ordered list of those diagnoses based on correlative data. Section 101 does not permit this.

19

Kabir also contends that his claims survive step two because the "combination of intersection logic, prevalence-based re-ranking, and patient prioritized symptom weighting" is inventive. Opp'n at 12–13. But the terms Kabir invokes appear nowhere in any of the claims and nowhere in the Third Amended Complaint. Indeed, the word "intersection" appears nowhere in the Asserted Patents.

Next, Kabir contends that "no human brain can perform [the claimed] exhaustive techniques," *id.* at 12, but that humans cannot perform diagnoses-symptom mapping at the scale permitted by the claimed methods is immaterial, *see Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1363–64 (Fed. Cir. 2023) (holding claims may still "be directed to an abstract idea even if the claims require generic computer components or require operations that a human could not perform as quickly as a computer"). Although Kabir argues that the claimed methods "improve the functioning of computer-assisted diagnostic technology," Opp'n at 12, the claimed methods do not even mention a computer, let alone require the use of one.

To the extent the use of a computer is implied, Kabir shows only that a computer's use would improve the speed and efficiency of mapping diagnoses to patient symptoms, rather than show any improved computer functionality. *See Customedia Techs., LLC v. Dish Network Corp.*, 951 F3d 1359, 1364 (Fed. Cir. 2020) ("[C]laiming the improved speed or efficiency inherent with applying the abstract idea on a computer [is] insufficient to render the claims patent eligible as an improvement to computer functionality."). That is not enough to transform a claim at step two. To the extent Kabir relies on the use of a novel database to execute the claimed methods, a novel database is also insufficient to transform his claims. *Recentive Analytics*, 134 F.4th at 1214 (citing *SAP Am.*, 898 F.3d at 1168).

20

Accordingly, when viewing the claim elements either individually or as an ordered combination, the claimed methods do not provide any inventive concept "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217–18 (quoting *Mayo*, 566 U.S. at 72–73). The claimed methods appear directed to nothing more than logic functions that analyze and rank information, and Kabir fails to identify any allegation in his Third Amended Complaint that plausibly alleges otherwise. The Court will therefore **GRANT** WebMD's Motion seeking the dismissal of Kabir's patent infringement claim and will **DISMISS** Count One ***without prejudice***.

### 2.      *Kabir's Copyright claims (Count Two)*

The Copyright Act, 17 U.S.C. §§ 101–1511, grants a copyright owner protection against unauthorized copying and use. To plead a copyright infringement claim, a "plaintiff must establish (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002).

Kabir brings Count Two for copyright infringement. He alleges that he is the creator and exclusive owner of a unique and original database and that this database is subject to copyright protection. TAC ¶ 22. WebMD objects to Count Two on grounds that Kabir registered no copyright at the time of filing suit and that the material Kabir claims WebMD is infringing is not protectable by copyright law. W. Mot. at 16–20.

### i.      Kabir cannot circumvent 17 U.S.C. § 411

Although Kabir did not register a copyright at the time of filing this suit or at the time of filing his Third Amended Complaint, he has since completed registration. *See* D.E. 95. WebMD, however, argues that Kabir's belated registration cannot cure the sufficiency of his claim because

17 U.S.C. § 411 requires registration of the copyright as a *prerequisite* to filing suit and does not generally permit plaintiffs to file suit first and register a copyright later.  W. Mot. at 17–18. WebMD's argument finds support in opinions issued by district courts within the Second Circuit and the Ninth Circuit.  *See M.V. Music v. V.P. Records Retail Outlet, Inc.*, 635 F. Supp. 3d 31, 42 (E.D.N.Y. 2023) ("Courts in this Circuit—including this Court—have routinely rejected the argument advanced by Plaintiffs that amending the complaint can cure a failure to register a copyright before initiating a copyright infringement lawsuit." (collecting cases)); *Roblox Corp. v. Wowwee Grp., Ltd.*, 660 F. Supp. 3d 880, 891 (N.D. Cal. 2023) (similar).

Those courts have focused on the plain text of § 411, which "t[ies] the registration requirement to when a 'civil action' is 'instituted,'" and not to when an amended pleading is filed. *See, e.g.*, *Roblox Corp.*, 660 F. Supp. 3d at 891 (quoting *Kifle v. YouTube LLC*, No. 21-1752, 2021 WL 1530942, at *6 (N.D. Cal. Apr. 19, 2021)).  By specifying that registration must antedate the filing of a civil action, the text of § 411 thus appears to render a suit for copyright infringement void at its inception in the absence of a registered copyright.  Pursuant to this logic, Kabir's failure to have registered his copyright *prior* to initiating this action thus dooms his copyright infringement claim as a matter of law.  *See id.*

These same courts have also found support in the Supreme Court's treatment of § 411 as "an administrative exhaustion requirement."  *See, e.g.*, *Izmo, Inc. v. Roadster, Inc.*, No. 18-6092, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019) (quoting *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019)).  In addressing whether a plaintiff need only apply for a copyright to sue or whether a plaintiff needed to complete registration of a copyright to sue, the Supreme Court in *Fourth Estate* reiterated that Congress has "[t]ime and again . . . maintained registration as a prerequisite to suit, and rejected proposals that would have eliminated registration

22

or tied [suit] to the copyright claimant's application instead of the Register's action." 586 U.S. at 307. Although *Fourth Estate* did not address the question posed here—whether a copyright registered after filing can cure non-compliance with § 411—the Supreme Court did make clear that the statute plainly requires pre-suit registration and courts are not free to "revise § 411(a)'s congressionally composed text." *Id.* at 309.

Although this reasoning is persuasive, the absence of precedent addressing this particular question within *this* Circuit gives the Court pause. The Court will therefore **DISMISS** Kabir's copyright infringement claim ***without prejudice*** on other grounds, *see infra* Section III.C.2.ii, and will permit Kabir an opportunity to show cause as to why § 411 should not bar Count Two.

### ii.        Kabir does not claim infringement of copyrightable work

To establish a claim for copyright infringement, a plaintiff must allege: (1) "which specific original work is the subject of the copyright claim"; (2) "that plaintiff owns the copyright"; (3) "that the work in question has been registered in compliance with the statute"; and (4) "by what acts and during what time defendant has infringed the copyright." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).

A valid copyright, however, "extends only to copyrightable subject matter." *Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*, 38 F.4th 331, 336–37 (3d Cir. 2022). "[A]ny idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied" is excluded from copyright protection under 17 U.S.C. § 102(b). Databases, which copyright law treats as compilations, are copyrightable. *See FedEx Ground Packaging Sys. v. Applications Int'l Corp.*, No. 03-1512, 2008 WL 4279751, at *5–6 (W.D. Pa. Sept. 12, 2008). Compilations are works "formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or

23

arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. Copyrights over databases, however, extend to only the "material contributed by the author of such work, as distinguished from the preexisting material employed in the work." *Id.* § 103(b).

Kabir alleges that he owns a copyright covering the "compilation, structure, selection, coordination, and arrangement of [a] database." TAC ¶ 22.II. Kabir further alleges that WebMD incorporated a substantial portion of the database into its Symptom Checker tool. *Id.* ¶ 22.IV. Kabir does not, through either his Third Amended Complaint or his Opposition, however, explicitly explain what features of the database WebMD has allegedly incorporated into its Symptom Checker tool.[14] At most, Kabir's Third Amended Complaint suggests that WebMD's Symptom Checker tool incorporates the "functionality, logic flows, and clinical mappings" of Kabir's database, TAC ¶ 14, but these allegations do not reference copyrightable elements of a work, 17 U.S.C. § 102(b) (excluding methods of operation, concepts, processes, systems, etc. from copyright protection). To the extent WebMD has made use of preexisting material that Kabir has employed in his database, such use would not amount to infringement. 17 U.S.C. § 103(b); *see Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 556 (1985) (limiting copyrights in compilations "to the particular selection or arrangement" of facts and explaining that "a subsequent compiler remains free to use the facts contained in another's publication in preparing a competing work"). Kabir's threadbare allegations—that he owns a copyright over a database

---

[14] Kabir's Opposition makes no meaningful argument in support of his copyright infringement claim. Instead, Kabir, in an attempt to conserve page space, merely references one of the stricken oppositions he filed in response to THOUGHTi's Motion. *See* Opp'n at 17–20 (attempting to incorporate pages 4–6 and 12–29 of argument from a stricken brief). For the reasons previously explained, the Court will not permit Kabir to argue his Opposition through piecemeal filings. *See supra* Sections I.B and III.B.

and that WebMD has made use of some unspecified portion of this database—do not therefore state a plausible claim for copyright infringement.  The Court will therefore **DISMISS** Count Two *without prejudice*.

### 3.    *Kabir's trade secret misappropriation claims (Count Three)*

Kabir alleges that his database, algorithms, and related methods are proprietary and subject to trade secret protection under the Defend Trade Secrets Act.  TAC ¶ 23.I.  To plead a violation of the DTSA, a plaintiff must demonstrate, among other things, that he owns the trade secret.  18 U.S.C. § 1836(b)(1).  Otherwise, a plaintiff who is not the "owner" of the trade secret at the time the suit is filed lacks standing to bring a claim for trade secret misappropriation.  *Biohaven Therapeutics Ltd. v. Avilar Therapeutics*, No. 23-328, 2025 WL 2443517, at *12 (D. Del. Apr. 10, 2025) (quoting 18 U.S.C. § 1836(b)(1)).

WebMD points out that Kabir's own filings demonstrate that he lacks standing to bring a DTSA claim because he did not own the trade secret at issue here at the time he brought suit.  W. Mot. at 20–22.  Kabir does not contest this in his Opposition.  Instead, Kabir contends that the trade secret has been assigned to him since then, and cites to an exhibit to one of his stricken oppositions to THOUGHTi's Motion.  Opp'n at 18 (citing D.E. 159-1 at 23–25).  The Court cannot consider this exhibit.

"[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).  Once again, Kabir disregards the Federal Rules of Civil Procedure and attempts to avoid the consequences of his inadequate pleadings by inundating this Court and Defendants with belatedly filed documents that are improper to consider.  The Third Amended Complaint's failure to allege facts plausibly establishing ownership over the allegedly misappropriated trade secret is

25

grounds for dismissal of his DTSA claim.  The Court will therefore **DISMISS** Kabir's trade secrets misappropriation claim *without prejudice* on the above grounds.[15]

## IV.    CONCLUSION

Having considered the parties' arguments, the Court will **GRANT** the Motions and (1) **DISMISS** THOUGHTi from this action; (2) **DISMISS** Count One against WebMD *without prejudice*; (3) **DISMISS** Count Two against WebMD *without prejudice*; and (4) **DISMISS** Count Three against WebMD *without prejudice*.  An appropriate Order accompanies this Opinion.

Dated: June 10, 2026

Evelyn Padin, U.S.D.J.

---

[15]  The Court notes the exhibit that Kabir cites to establish his ownership of the trade secret, D.E. 159-1, was executed on November 4, 2025, several months *after* Kabir instituted this action in April 2025.  D.E. 159-1 at 23–25.  Therefore, if the Court could consider this exhibit, it may not help Kabir.  However, the Court will permit Kabir an opportunity to show cause as to why his own filings indicating he lacked ownership at the time the lawsuit was filed should not bar Count Three.