Wendi Opper Uzar
Corey L. LaBrutto
**RIKER DANZIG LLP**
7 Giralda Farms, Suite 250
Madison, NJ 07940-1051
Telephone: (973) 451-8647
Facsimile: (973) 451-8557
wuzar@riker.com
clabrutto@riker.com

*Attorneys for Defendant* THOUGHTi, *Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Azad Kabir,<br><br>Plaintiff,<br><br>vs.<br><br>WebMD LLC, THOUGHTi, Inc., Nilesh Patkar, and John Doe 1.<br><br>Defendants. | Civil Action No.<br><br>2:25-cv-15207 (EP) (JSA)<br><br>Motion Return Date: November 2, 2026 |

**BRIEF IN SUPPORT OF DEFENDANT THOUGHTI, INC.'S MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) and 12(b)(6)**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iv

PRELIMINARY STATEMENT .......... 1

PROCEDURAL HISTORY .......... 3

STATEMENT OF FACTS .......... 5

A. Plaintiffs' Allegations .......... 5

B. Jurisdictional Facts .......... 8

C. Plaintiff's Alleged Intellectual Property Rights .......... 9

1. Trade Secret .......... 9

2. Patent .......... 11

STANDARD OF REVIEW .......... 13

A. Standard under 12(b)(2) .......... 13

B. Standard under 12(b)(6) .......... 14

LEGAL ARGUMENT .......... 15

A. The FAC Must be Dismissed as to THOUGHTi for Lack of Personal Jurisdiction .......... 15

B. Count I for Patent Infringement (Direct and Indirect) are Barred by the Statute of Limitations as to THOUGHTi .......... 17

C. Count I for Patent Infringement Must be Dismissed for Failure to State a Claim .......... 17

1. The Asserted Patents are Invalid Under a §101 Analysis .......... 17

2. Plaintiff's Fails to State a Claim for Direct Patent Infringement .......... 20

3. Plaintiff Fails to State a Claim for "Indirect" Patent Infringement Against THOUGHTi .......... 22

D. Count III for Trade Secret Misappropriation Must Be Dismissed for Failure to State a Claim .......... 23

1. Plaintiff's Trade Secret Misappropriation Claim is Barred by the Statute of Limitations .......... 23

2. Plaintiff's Trade Secret Misappropriation Claim Must be Dismissed for Failure to Allege the Necessary Elements of an Appropriation Claim .............24

E. Amendment is Futile.........................................................................27

CONCLUSION ...........................................................................................28

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

Alice Corp. Pty. Ltd. v. CLS Bank Int'l,
573 U.S. 208 (2014) ....................17, 18

Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009) ....................14

Berkheimer v. HP Inc.,
881 F.3d 1360 (Fed. Cir. 2018) ....................18

Beta Pharma, Inc. v. Inventis Biotechnology (Shanghai) Co.,
2024 U.S. Dist. LEXIS 234823 (D.N.J. Dec. 31, 2024) ....................24

Bistrian v. Levi,
696 F.3d 352 (3d Cir. 2012) ....................14

Bristol-Myers Squibb v. Superior Court of California,
582 U.S. 255 (2017) ....................15

Burger King Corp. v. Rudzewicz,
471 U.S. 462 (1985) ....................16

Charles Gendler & Co., Inc. v. Telecom Equip. Corp.,
102 N.J. 460 (N.J. 1986) ....................15

Cowell v. Palmer Twp.,
263 F.3d 286 (3d Cir. 2001) ....................27

Elite Neurophysiology LLC v. Blue Cross Blue Shield,
2025 LX 396087, at *3 (D.N.J. Aug. 18, 2025) ....................13

Elmagin Cap., LLC v. Chao Chen,
2024 U.S. App. LEXIS 13608 (3d Cir. Mar. 21, 2024) ....................24, 25

Fowler v. UPMC Shadyside,
578 F.3d 203, 210 (3d Cir. 2009) ....................14

Global-Tech Appliances, Inc. v. SEB S.A.,
563 U.S. 754 (2011) ....................22

Goodyear Dunlop Tires Operations, S. A. v. Brown,
564 U. S. 915 (2011) ....................15

Gottschalk v. Benson,
409 U.S. 63, 93 S. Ct. 253 (1972) ....................19

Houser v. Feldman,
569 F. Supp. 3d 216 (E.D. Pa. 2021) ....................24

Insulet Corp. v. EOFlow, Co.,
176 F.4th 1347 (Fed. Cir. 2026) ....................17

Recentive Analytics, Inc. v. Fox Corp.,
134 F.4th 1205 (Fed. Cir. 2025) ....................20

Roshan v. N.J. Inst. of Tech.,
2025 U.S. Dist. LEXIS 166553 (D.N.J. Aug. 27, 2025) ....................23

Limelight Networks, Inc. v. Akamai Techs., Inc.,
572 U.S. 915 (2014) ....................22

Transperfect Holdings LLC v. Pincus Credit Suisse Sec. USA LLC,
2025 U.S. App. LEXIS 14886 (3d Cir. June 17, 2025) ....................27

Ultramercial, Inc. v. Hulu, LLC,
772 F.3d 709 (Fed. Cir. 2014) ....................20

United Servs. Auto. Ass'n v. PNC Bank N.A.,
139 F.4th 1332 (Fed. Cir. 2025) ....................20

Voorhees v. Tolia,
2023 U.S. App. LEXIS 18426 (3d Cir. July 20, 2023) ....................26

**Statutes**

18 U.S.C. §1836 ....................24

18 U.S.C. §1839 ....................25

35 U.S.C. §101 ....................................................................................................17

35 U.S.C. §271 ..............................................................................................20, 22

35 U.S.C. §286 ....................................................................................................17

N.J.S.A. §56:15-2 .........................................................................................24, 25

N.J.S.A. 56:15-8 ..................................................................................................24

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ..........................................................14

**PRELIMINARY STATEMENT**

Defendant THOUGHTi, Inc. ("THOUGHTi") files this motion to dismiss Count I for patent infringement ("direct" and "indirect") and Count III for trade secret misappropriation of the Fourth Amended Complaint (the "FAC") against THOUGHTi, filed by Dr. Azad Kabir ("Plaintiff"). (Plaintiff's FAC can be found at ECF Doc. ("Doc.") 217).[1]

The FAC is approximately one-hundred fifty (150) pages and over two hundred sixty (260) paragraphs combining: i) legal arguments, ii) Plaintiff's purported expert opinion, iii) allegations on information and belief, iv) confusing, sometimes inconsistent, assertions of fact, and v) at least twenty-three (23) exhibits incorporated from the voluminous docket (however not including the patents-in-suit). Despite the length of the FAC, it does not resolve the deficiencies raised by this Court in its Order to dismiss Plaintiff's third amended complaint (the "TAC") (Doc. 95). Therefore, THOUGHTi submits that Plaintiff's FAC must be dismissed as to THOUGHTi for lack of personal jurisdiction for at least the reasons set forth in Judge Padin's well-reasoned decision. (Doc. 208.)

---

[1] Pursuant to Judge Padin's General Pretrial and Trial Procedures, revised July 8, 2025, ¶II(E)(i), THOUGHTi files its motion to dismiss in lieu of a pre-motion letter, as Plaintiff is proceeding *pro se*. Separately, the FAC identifies three causes of action, Count I for patent infringement, Count II for copyright infringement, and Count III for trade secret misappropriation. While Plaintiff has withdrawn Count II it nonetheless remains in the FAC.

As to the claims, the FAC reasserts Plaintiff's unfounded conspiracy theory as set forth in the TAC. Plaintiff alleges that, from 2017 through 2018, THOUGHTi had access to his "proprietary medical database," which consists of a combination of allegedly trade secret datasets used in connection with his two patented methods, which requires the use of Plaintiff's allegedly copyrighted source code to function (the "Database"). While Plaintiff asserts that the Database was continuously worked on from 2011 through 2026, Plaintiff only alleges that THOUGHTi had access to the Database until 2018.

Nevertheless, Plaintiff alleges that THOUGHTi provided WebMD LLC ("WebMD") with access to the Database, and thereafter WebMD (perhaps through THOUGHTi or another company in the artificial intelligence ("AI") space) used the Database to develop its AI Symptom Checker tool ("Symptom Checker"). Plaintiff alleges that these actions constitute trade secret misappropriation and patent infringement. As the facts as alleged do not, on their face, constitute trade secret misappropriation or patent infringement, Plaintiff's FAC must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Moreover, Plaintiff alleges discovery of the basis of infringement as early as 2019, and thus his claims are time barred.

While Plaintiff's FAC is devoid of factual merit, the Court need not reach that conclusion with respect to THOUGHTi. This Court does not have personal

jurisdiction over THOUGHTi, nor are the necessary facts supporting jurisdiction alleged in the FAC. The FAC fails to cure the jurisdictional defect of the TAC. THOUGHTi is incorporated in the State of Delaware, maintains no office in the United States, previously maintained offices in Missouri, and does not (nor is it sufficiently alleged to) direct its conduct into New Jersey. None of the alleged facts pertaining to THOUGHTi occurred in or are connected to New Jersey. Accordingly, there is no basis to haul THOUGHTi into court in New Jersey, and it must be dismissed for lack of personal jurisdiction.

For all these reasons, and those more fully set forth below, THOUGHTi respectfully requests that this Court dismiss Plaintiff's FAC as to THOUGHTi.

## PROCEDURAL HISTORY

This action was originally filed by Doctor AI, LLC against WebMD LLC ("WebMD") on April 21, 2025, in the United States District Court, Middle District of Georgia (Doc. 1.) On May 8, 2025, Plaintiff filed a motion to appear *pro se*, which was construed by the District Court of Georgia as a motion to amend the complaint. (Doc. 4; Doc 6.) On May 15, 2025, the First Amended Complaint was filed, and Doctor AI, LLC was substituted for Plaintiff. (Doc. 6.) On August 29, 2025, the District Court of Georgia ordered Plaintiff to show cause as to why the action should not be transferred to the District Court of New Jersey, (Doc. 53), and Plaintiff consented to the transfer (Doc. 54).

Upon transfer, Plaintiff was permitted leave to file the TAC. (Doc. 95). On November 3, 2025, motions to dismiss were filed by both THOUGHTi and co-defendant WebMD. (Doc. 104, Doc. 105.) On June 10, 2026, this Court granted both motions to dismiss. (Doc. 208.) The Court granted THOUGHTi's motion finding that Kabir provided no basis to conclude that the Court had general or specific jurisdiction over THOUGHTi. (Doc. 208 at p. 10.) The dismissal provided Plaintiff the opportunity to amend his pleadings, and Plaintiff thereafter filed the FAC. (Doc. 217.) The FAC fails to cure the deficiencies of the TAC and does not add a basis for general or specific jurisdiction over THOUGHTi. Therefore, the FAC must also be dismissed.

As a matter of procedural clarity, the FAC incorporates allegations in support of the withdrawn copyright infringement claim (see Doc. 217 at ¶¶14, 218), as well as possible claims of breach of contract and fraudulent inducement (see Doc. 217 at ¶¶228, 246). THOUGHTi requests that the Court enter an order clarifying that these claims are not before the Court, as they are not separately pled causes of action in the FAC. If the Court finds those claims are pled, THOUGHTi requests leave to separately move to dismiss such claims.

## STATEMENT OF FACTS

### A. Plaintiffs' Allegations

Plaintiff alleges that he contracted with THOUGHTi LLC beginning in 2017 to perform engineering tasks that required "access to Plaintiff's database and proprietary algorithms." (Doc. 217 at ¶150.) It appears that, in August 2017, Plaintiff engaged THOUGHTi LLC through a third-party service, stating: "I need to integrate my software DDxRx.com with EPI EMR.. .. DDxRx will receive demographic, vitals laboratory and medication list EPIC will receive progress notes." (Doc. 59-14.) (See also Doc. 122-10 ("Client desires to develop an integration module for its ddxrx.com with one of the EPIC site. Client has signed BAA with the hospital and been authorized to access the EPIC system.")). The work described did not relate to the development of the Database or any underlying purported intellectual property.

In connection with the work, three separate non-disclosure agreements ("NDAs") were executed with the Essential Group Publishing LLC ("EGP"), not Plaintiff, as follows: the first between Nilesh Patkar in his individual capacity and using his e-mail address nielpro@gmail.com in August 2017; the second between Mr. Patkar in his individual capacity, using his full name and personal e-mail address in September 2017; and the third between Mr. Patkar on behalf of THOUGHTi LLC in January 2018. (See Doc. 217, ¶¶174-175; see also Docs. 122-11, 122-12, 59-9.) The NDAs executed by Mr. Patkar in his individual capacity contain Louisiana choice of law and venue clauses. (See Docs. 122-11, 122-12). The NDA executed on

behalf of THOUGHTi LLC has Mississippi choice of law and venue clauses. (Doc. 59-9.) While Plaintiff alleges that Mr. Patkar's use of a personal e-mail address was to deceive him, the history of the NDAs makes it clear that Plaintiff was not deceived or deterred by such use. Upon clarification, EGP entered into the third NDA with THOUGHTi LLC in January 2018.

Plaintiff is not a party to any of the three NDAs under which THOUGHTi was allegedly provided access to Plaintiff's alleged trade secrets. (Docs. 59-9, 122-11, 122-12.) Instead, the NDAs are executed on behalf of the corporate entity EGP. (Id.) The NDAs further specify that EGP owns all the intellectual property that THOUGHTi was provided access to, and further, that any work performed by THOUGHTi that constituted protectible intellectual property was assigned to EGP. (Id.) All work conducted in accordance with the NDAs ended on or about October 5, 2018. (Doc. 59-14.)

Based on the allegations in the FAC, Plaintiff had no further contact with THOUGHTi or Mr. Patkar after 2018 until sometime in 2024, when Plaintiff sent confusing messages related to the claims of this suit. (Doc. 217 at ¶210; see also Doc. 59-2.[2]) Plaintiff alleges on information and belief that "THOUGHTi transferred

[2] Plaintiff relies on screenshots of a confusing interaction with Anupam Das, CEO of THOUGHTi, which Plaintiff alleges confirms THOUGHTi's relationship with WebMD. Rather than "confirming" any involvement, these messages evidence miscommunication where Plaintiff is intentionally asking vague questions related to

Plaintiff's proprietary database, code, and methods to WebMD around 2017-2018." (Doc. 217 at ¶154.) Simultaneously, Plaintiff alleges that the Database was continuously developed from 2011 through 2026. (Doc. 217 at ¶149.) One of the patents-in-suit was not issued until much later, in 2024. (Doc. 217 at ¶7.) Nevertheless, Plaintiff does not allege that THOUGHTi had access to any improvements or developments following October 2018. THOUGHTi denies all allegations related to its alleged participation, including any association with WebMD. THOUGHTi has never worked with or for WebMD. (See Doc. 104-2, Declaration of Anupam Das, CEO of THOUGHTi ("Das Dec."), ¶10; see also Doc 40-2 (Declaration of Abdallah Abuhussein, ¶11 ("I am not aware of, nor have I ever had any interactions with, a company called THOUGHTi LLC, nor the individuals allegedly associated with that company, Nilesh Patkar or Nupam [sic] Das.")

Plaintiff has identified 2019 as the year in which he became aware of the alleged infringement of his intellectual property. (Doc. 59-26, at Page 4 ("2019: DDXRX.com observes striking similarities between WebMD's "Symptom Checker" tool and its own patented technology, raising suspicions of unauthorized database usage and patent claim infringement.")[3] Alternatively, Plaintiff states that in 2020 he

---

work he tells Mr. Das he needs completed for his own symptom checker and Mr. Das confirms that THOUGHTi can help him. (Doc. 122-2.)

[3] By as early as July 19, 2018, Plaintiff's pleading sets forth that Plaintiff emailed Anupam Das about Nilesh Patkar's alleged suspicious activity. (Doc. 59-17.)

"discovered WedMD's Symptom Checker incorporated strikingly similar functionality, logic flows, and clinical mappings, consistent with Plaintiff's patent and database." (Doc. 217, ¶155.) Plaintiff's FAC thus establishes that Plaintiff had actual knowledge of any alleged misappropriation or infringement between 5 and 6 years prior to filing his original complaint in April of 2025.

**B. <u>Jurisdictional Facts</u>**

The FAC fails to allege facts sufficient to provide this Court with personal jurisdiction over THOUGHTi. This Court dismissed Plaintiff's TAC as to THOUGHTi. While Plaintiff alleged THOUGHTi directed activities into New Jersey, he failed to explain "what those activities were, where they took place, how they were directed at this forum, or how they invoked the benefits and protections of this forum's laws." (Doc. 208 at p. 10.) The FAC is no different.

THOUGHTi is a Delaware corporation, with no property located in the State of New Jersey. (Das Dec., ¶¶2, 4, 6.) THOUGHTi does not have a physical corporate headquarters; it's former headquarters, which closed in 2022, was located in St. Louis, Missouri. (Das Dec., ¶5.) The FAC acknowledges that THOUGHTi is a Delaware corporation (Doc. 217 at ¶143) and alleges that THOUGHTi is headquartered in St. Louis, Missouri (Doc. 217 at ¶143). THOUGHTi does not direct its activities into New Jersey: it does not target New Jersey consumers, it does not direct advertising into the State, it does not ship goods into the State, and it does not

offer services in the State. (Das Dec., ¶¶7-9.) The contractual documents related to work performed by Mr. Patkar and/or THOUGHTi for EGP, allegedly one of Plaintiff's corporate entities, are governed by either Louisiana or Mississippi law and were for work that did not occur in, or relate to, New Jersey. (Docs. 59-9, 122-11, 122-12.)

Plaintiff's sole allegation related to THOUGHTi's activities in New Jersey is that it is alleged to have conducted business with WebMD, who is located in New Jersey. (Doc. 217, ¶183.) Both defendants have denied that THOUGHTi and WebMD have ever conducted business or worked together. (Das Dec., at ¶10; Doc. 40-2 at ¶11.)

### C. Plaintiff's Alleged Intellectual Property Rights

#### *1. Trade Secret*

Plaintiff makes attempts, throughout the FAC, to define and clarify the scope of his purported trade secrets. Broadly understood, the FAC asserts trade secret protection over "foundational databases containing the specific symptom-to-disease mapping relationships," which contain "proprietary quantitative weights defining the exact statistical strength of association between specific symptoms and conditions," as well as associated metadata, which he alleges are kept "behind secure server architectures and are not accessible to the public." (Doc. 217 at ¶15.)

Plaintiff asserts that he has held "uninterrupted, continuous legal and equitable title, as well as unbroken physical and operational custody, to the Doctor AI Cognitive Diagnostic Reasoning Database and Source Code," since 2011 and that the historical entities EGP and Doctor AI LLC were merely "downstream operational conduits or licensing vehicles under Plaintiff's direct personal management." (Doc. 217 at ¶187.) Notwithstanding this representation, the NDA agreements clearly state that any intellectual property provided to THOUGHTi or Mr. Patkar in 2017 was the property of EGP and provided an assignment of all contracted work to EGP, not Plaintiff. (Docs. 59-9, 122-11, 122-12.)

Moreover, the "Employment Intellectual Property and Inventions Assignment Agreement (Including Nondisclosure)" for Syed Fakrur Rashid, whom Plaintiff alleges was hired to provide software engineering services (Doc. 217 at ¶221), was between Mr. Rashid and EGP (not Plaintiff). (Doc 159-3.) This NDA, as with those entered into by THOUGHTi, represents that all the confidential information provided to Mr. Rashid was the property of EGP (not Plaintiff), and it likewise assigns all protectible intellectual property generated during his employment to EGP (not Plaintiff). (Id.) Plaintiff separately alleges that his wife, Dr. Jebun Nahar, likewise helped create and had access to the Database. (Doc. 217 at ¶6.)

Plaintiff's FAC is silent as to who owns DDxRx.com, the platform THOUGHTi was hired to work on, however, one of Plaintiff's purported "expert"

patent analysis provides that DDxRx.com was or is its own entity and is the "[p]roprietary owner of the patented symptom checker and associated data base." (Doc. 217 at p. 178.) The FAC is unclear what role Doctor AI LLC had with respect to the Database. Moreover, it is not stated in the FAC who the members of EGP or Doctor AI LLC are to confirm whether any additional parties had access or ownership rights in the Database. However, Plaintiff's FAC is clear that "[n]o written agreement, employment contract, or IP assignment [was] ever executed to transfer trade secrets," to or from Doctor AI LLC or EGP prior to filing this action. (Doc. 217 at ¶194).

*2. Patent*

Plaintiff alleges that he is the owner of U.S. Patent No. US 9,536,051 ("the '051 Patent"), issued in 2017, and U.S. Patent No. 11,972,865 ("the '865 Patent") (collectively the "Asserted Patents"). (Doc. 217 at ¶7.) The FAC describes the '865 Patent as a continuation of the '051 Patent, "differing only in specific claim scope and the explicit integration of prevalence and life-threatening condition parameters" (Doc. 217 at ¶7.), and describes the patented subject matter as a "specific, concrete sequence of computer-implemented steps," as follows: "(i) collecting patient medical data; (ii) linking (mapping) that data to structured differential-diagnosis databases (tables); (iii) isolating only those diseases common across multiple

symptoms (intersection logic); and (iv) ranking those diseases using frequency and prevalence logic." (Doc. 217 at ¶122.)

Plaintiff alleges that the Symptom Checker infringes the '051 Patent, claims 1, 2, and 3, and the '865 patent, claims 1, 2, 3, 4, 9, 11, 12, and 13 by "utilizing a computerized backend database architecture that maps multi-symptom user inputs to relational tables, executes automated data-intersection operations (common disease), and structurally outputs a scale-ranked differential list based on pre-weighted epidemiological metadata." (Doc. 217 at ¶130.) Plaintiff points to four functions within "the LLM"[4] that are "equivalent" or otherwise "functionally identical" to the patented process: (1) symptom-disease linking, (2) common diagnosis counting (intersection) of multiple symptoms, i.e., the LLM "computes the joint probability that all entered symptoms co-occur for each disease," (3) weighting by clinical importance and prevalence, and (4) ranking by combined score. (Doc. 217 at ¶136.) Plaintiff alleges that the Symptom Checker is "performing structured

[4] Plaintiff refers to WebMD's Symptom Checker and a service provided by OpenAI simultaneously and in a way that makes it difficult to determine which platform he is alleging infringes on the patents in suit. It is THOUGHTi's understanding that Plaintiff is alleging that WebMD's Symptom Checker is provided by OpenAI (Doc. 217 at ¶202), or alternatively by Athenahealth (Doc. 217 at ¶249). The FAC makes mention of a discussion Plaintiff and Patkar had regarding Athenahealth in 2018 which he alleges "supports the possibility that Athenahealth served as the undisclosed third party" contractor that performed the work on the Symptom Checker. (Doc. 217 at ¶249.) These allegations highlight the lack of factual basis Plaintiff has to bring the claims in the FAC—he does not adequately allege that the offending conduct was performed by any named defendant.

differential diagnosis with explicit strength-of-match scoring—a process squarely within the scope of Plaintiff's patented claims." (Doc. 217 at ¶91.) Plaintiff further alleges that, in order to perform the patented method, an entity would necessarily need access to his copyrighted and trade secret materials. (Doc. 217 at ¶255.)

Plaintiff's FAC provides no factual allegations as to THOUGHTi's conduct or actions that constitute patent infringement (either directly or indirectly). The FAC is devoid of any factual allegation that would support Plaintiff's claim, made for the first time in the "cause of action," section of the FAC at ¶262(3), that THOUGHTi "designed, developed, and technically integrated the backend software architecture utilized by both WebMD and OpenAI." Otherwise, the FAC alleges merely that THOUGHTi had access to an early iteration of Plaintiff's Database, prior to the issuance of the '865 Patent, and that Plaintiff believes THOUGHTi gave WebMD access to same.

## STANDARD OF REVIEW

### A. Standard under 12(b)(2)

Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2). In reviewing a motion to dismiss for lack of personal jurisdiction, the Court accepts as true all well-pled factual allegations in a light most favorable to the non-moving party. Elite Neurophysiology LLC v. Blue Cross Blue Shield, 2025 LX 396087, at *3 (D.N.J. Aug. 18, 2025). Once a

jurisdictional defense is raised, plaintiff bears the burden of establishing by competent evidence that jurisdiction is appropriate. Id.

For the reasons set forth below, Plaintiff's FAC must be dismissed as to THOUGHTi for lack of personal jurisdiction. This is especially the case here, as Plaintiff was given an opportunity to cure the personal jurisdiction defect of his TAC, and he did not, and cannot.

**B. Standard under 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) governs a dismissal for failure to state a claim for relief. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, the complaint must "contain sufficient factual matter to state a claim that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is facially plausible "when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Federal courts use a two-part analysis to determine whether to dismiss a complaint. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). First, courts separate the factual and legal elements of the claim. The court must "accept as true all well-pled factual allegations"; draw all reasonable inferences in the plaintiff's favor; and may disregard any legal conclusions. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2012); Fowler, 578 F.3d at 210-11. The court must then determine

whether the facts alleged in the complaint are "sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 556 U.S. at 679). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 662.

For the reasons set forth below, Plaintiff's FAC, Counts I and III, must be dismissed as to THOUGHTi for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL ARGUMENT

### A. The FAC Must be Dismissed as to THOUGHTi for Lack of Personal Jurisdiction

Federal Courts in New Jersey exercise personal jurisdiction in accordance with New Jersey State law, which provides for jurisdiction to "the uttermost limits permitted by the United States Constitution." Charles Gendler & Co., Inc. v. Telecom Equip. Corp., 102 N.J. 460, 469 (N.J. 1986) (internal citations omitted). Personal jurisdiction is established through either general jurisdiction or specific jurisdiction. Bristol-Myers Squibb v. Superior Court of California, 582 U.S. 255, 262 (2017).

General jurisdiction over a company exists in its state of incorporation, in the state of its principal place of business, or where its business dealings are "so 'continuous and systematic' as to render [it] essentially at home in the forum state." Id. at 271 (quoting Goodyear Dunlop Tires Operations, S. A. v. Brown, 564 U. S.

915, 919 (2011)). Plaintiff has not alleged that general jurisdiction exists as to THOUGHTi, nor can he. THOUGHTi is a Delaware corporation, with no connection to New Jersey.

Specific jurisdiction exists where a defendant has "purposefully directed his activities at residents of the forum. . . . and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (internal citations omitted). Plaintiff has not alleged any conduct of THOUGHTi that was directed to the State of New Jersey, or residents of the State of New Jersey. Plaintiff does not allege that he is a New Jersey resident, or that he performed any work on the Database in New Jersey. Indeed, Plaintiff was located in Mississippi at the time that he initially contacted THOUGHTi in 2017. (see Doc. 59-11 at page 7 (contract listing Plaintiff's address in Biloxi, Mississippi)), and the NDA contract between the parties requires jurisdiction in Mississippi, while the earlier NDAs require jurisdiction in Louisiana. It appears that the only link between this case and New Jersey is a separate and distinct Defendant, whom THOUGHTi has no interactions or involvement with, and never has.

As there is no personal jurisdiction in New Jersey, THOUGHTi respectfully requests that the FAC be dismissed as to THOUGHTi.

### B. Count I for Patent Infringement (Direct and Indirect) are Barred by the Statute of Limitations as to THOUGHTi

The statute of limitations for patent infringement is six (6) years. See 35 U.S.C. §286; Insulet Corp. v. EOFlow, Co., 176 F.4th 1347, 1352 (Fed. Cir. 2026) (holding that a 2026 complaint for infringement allegedly occurring in 2018 was barred by the statute of limitations for patent actions). The FAC does not allege any conduct on behalf of THOUGHTi following 2018. Further, the Plaintiff's complaint makes clear that he discovered the purported infringement as early as 2019. Accordingly, a complaint brought in 2025 is barred by the six-year statute of limitations.

### C. Count I for Patent Infringement Must be Dismissed for Failure to State a Claim

#### 1. *The Asserted Patents are Invalid Under a §101 Analysis*

Plaintiff's patent claims fail at the outset. Under Supreme Court guidance, a patent is invalid under 35 U.S.C. §101 if it is directed at performing an abstract concept. Alice Corp. Pty. Ltd. v. CLS Bank Int'l, 573 U.S. 208 (2014) (invalidating a patent for a computer-implemented scheme to mitigate settlement risks as directed at an abstract concept). This is because a "[m]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it," which is contrary to the purpose of patent laws. Id. at 216 (internal citations omitted). This is a reflection of the "longstanding rule" that an idea itself is

not patentable subject matter. Id. at 28. Under Alice the Court undertakes a two-step process, first determining if the subject matter is ineligible, and, if it is, determining if the patent-in-practice amounts to "significantly more" than a patent upon an ineligible concept, i.e., whether there is an "inventive concept" beyond merely asserting protection over the abstract concept. Id. at 217-18.

Plaintiff's FAC does not attach, either directly or by reference to a document on the docket, copies of the Asserted Patents, however, it lists several of the claims in the Asserted Patents, including Claim 9 of the '865 Patent ("Claim 9"). Claim 9 is representative of the Asserted Patents, and Plaintiff has not provided a meaningful basis to assess the other claims as representative, and therefore it is submitted that the Court should evaluate the validity of the Asserted Patents collectively based upon a review of Claim 9. See Berkheimer v. HP Inc., 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative.")

Claim 9 recites a method of performing differential diagnostics by "collecting" medical data; "accessing" medical data tables; "connecting . . . the medical data with the . . . medical data tables"; "isolating all disease data common" to the differential diagnosis; "generating a list of said isolated common disease data";

and "arranging" the results in a "ranked order". ¶60. Plaintiff's FAC goes on to elaborate how the remaining claims of both Asserted Patents support the process claimed in Claim 9. (See FAC ¶¶53-71.) Claim 9 merely recites the steps required for a physician to perform differential diagnostics.

While the Asserted Patents claim a system that is alleged to handle an enormous amount of information and process that information more rapidly than a human being, the Asserted Patents, as interpreted by Plaintiff, claim the abstract process of differential diagnostics. Plaintiff alleges that no computer software is capable of performing differential diagnoses without practicing the claimed processes of the Asserted Patents. (See Doc. 217 at ¶¶133-135; see also Doc. 217 at ¶139 (stating that any program that provides a differential diagnosis infringes the Asserted Patents because they "ingest client-side symptoms, isolate variables, and generate rank-ordered differential diagnosis lists by processing data across vast, interconnected datasets.")

By Plaintiff's own allegation, he claims the Asserted Patents cover the general idea of using software to perform differential diagnostics. Such subject matter is not patent eligible. See Gottschalk v. Benson, 409 U.S. 63, 68, 93 S. Ct. 253, 255 (1972) (holding a patented method of converting code into binary was "so abstract and sweeping" as to prevent all methods of conversion and was thus not patent-eligible subject matter).

Plaintiff's only allegation that the Asserted Patents contain an inventive concept is that practicing the Asserted Patents allows the diagnostic process to happen more rapidly. This is merely the "computer-mediated implementation of routine or conventional activity," which has been held not sufficient to "provide an inventive concept." United Servs. Auto. Ass'n v. PNC Bank N.A., 139 F.4th 1332, 1337 (Fed. Cir. 2025) (invalidating a patent where the claims reciting "routine data collection and analysis steps that have been traditionally performed by banks and people depositing checks" and that the implementation on mobile app was not sufficient to provide an inventive concept); Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 715 (Fed. Cir. 2014) (invalidating a patent directed to "a method of using advertising as an exchange or currency" through an allegedly novel software process as being aimed at an abstract idea that was not rendered inventive by the mere addition of software); see also Recentive Analytics, Inc. v. Fox Corp., 134 F.4th 1205, 1214 (Fed. Cir. 2025) ("[T]he application of existing technology to a novel database does not create patent eligibility.")

Thus, based solely upon Plaintiff's FAC, the Asserted Patents are directed to ineligible subject matter under §101 and should be invalidated.

2. *Plaintiff's Fails to State a Claim for Direct Patent Infringement*

The FAC asserts a claim of direct patent infringement against THOUGHTi, while being utterly devoid of any factual allegation as to how THOUGHTi, or any

product or system in the control of THOUGHTi, infringes the Asserted Patents. In order to state a claim for patent infringement, Plaintiff must assert that a party "makes, uses, offers to sell, or sells any patented invention," in the United States. 35 U.S.C. §271(a). THOUGHTi is not alleged to make, use, offer to sell, or sell any product or system that infringes the Asserted Patents.

Moreover, Plaintiff's FAC does not state a claim for patent infringement with respect to WebMD's Symptom Checker. Instead, the FAC alleges that the Symptom Checker is capable of generating output similar to the output generated by systems utilizing the methods taught in the Asserted Patents. The screenshots pictured in the FAC show that the Symptom Checker is capable of generating the same output as Plaintiff alleges the system taught in his Asserted Patents generates. (Doc. 217 at ¶¶76-90.) The FAC is devoid of any credible factual assertions explaining *how* the Symptom Checker functions to generate output and the process involved, instead relying on assumptions as to the underlying process based only upon a review of the end product.

The FAC thus fails to explain how each step of the claims of the Asserted Patents are infringed and fails to assert a claim of direct patent infringement against any party.

### 3. *Plaintiff Fails to State a Claim for "Indirect" Patent Infringement Against THOUGHTi*

In order to bring a claim for indirect infringement (i.e., inducement of patent infringement), Plaintiff must first prove that there was a direct infringement of the patent by Symptom Checker. Limelight Networks, Inc. v. Akamai Techs., Inc., 572 U.S. 915, 921 (2014). As set forth above, Plaintiff cannot show direct infringement of the Symptom Checker, and therefore cannot show indirect infringement.

Plaintiff asserts two theories of indirect infringement: contributory infringement and inducement. Inducement under 35 U.S.C. §271(b) requires that Plaintiff show that the defendant had actual knowledge that the actions induced constituted patent infringement. Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 766 (2011). Contributory infringement exists where a party sells, offers to sell, or imports into the United States "a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent." 35 U.S.C. §271(c).

Plaintiff does not allege that THOUGHTi had knowledge of the Asserted Patents, one of which issued significantly after THOUGHTi is alleged to have been involved in the conspiracy theory. Moreover, Plaintiff's FAC is devoid of any well-pled factual allegation regarding how THOUGHTi is alleged to have contributed to

WebMD's alleged infringement. The FAC does not allege how any conduct by THOUGHTi would have infringed the Asserted Patent—it does not set forth what code or process THOUGHTi allegedly created; when, where, or how such work was completed and deployed in the Symptom Checker; or which specific claims in the Asserted Patents that alleged work infringed. Instead, Plaintiff asserts on information and belief that THOUGHTi—or OpenAI, or Athenahealth, or some other third party—may have assisted WebMD in developing the Symptom Checker. Mere assertions of fact on information and belief are insufficient to plausibly state a claim under Federal Rule of Civil Procedure 12(b)(6).

Accordingly, Plaintiff has failed to state a claim for indirect infringement against THOUGHTi and Count I should be dismissed against THOUGHTi.

### D. Count III for Trade Secret Misappropriation Must Be Dismissed for Failure to State a Claim

#### 1. *Plaintiff's Trade Secret Misappropriation Claim is Barred by the Statute of Limitations*

A complaint can be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if the claims are clearly barred by the statute of limitations based upon the face of the complaint. Roshan v. N.J. Inst. of Tech., 2025 U.S. Dist. LEXIS 166553, at *22 (D.N.J. Aug. 27, 2025) (internal citations omitted). The DTSA and NJTSA both provide a three year statute of limitations on trade secret misappropriation, which begins to run from the date the alleged appropriation "is discovered or by the

exercise of reasonable diligence should have been discovered." 18 U.S.C. §1836(d); see also N.J.S.A. 56:15-8.

Plaintiff's FAC unequivocally establishes that Plaintiff suspected trade secret misappropriation as early as 2019, but not later than 2020, and has alleged he was suspicious of it as early as 2018. Accordingly, on the face of Plaintiff's FAC, his claims are time barred and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). See Beta Pharma., Inc. v. Inventis Biotechnology (Shanghai) Co., No. 23-cv-21047-ESK-EAP, 2024 U.S. Dist. LEXIS 234823, at *12 (D.N.J. Dec. 31, 2024) (dismissing a complaint where the plaintiff's complaint indicated they were on notice of alleged misappropriation more than three years before instituting suit); Houser v. Feldman, 569 F. Supp. 3d 216, 226 (E.D. Pa. 2021) (dismissing a DTSA claim with prejudice where it was "clear from the face of the complaint that the statute of limitations had run" prior to filing).

2. *Plaintiff's Trade Secret Misappropriation Claim Must be Dismissed for Failure to Allege the Necessary Elements of an Appropriation Claim*

To set forth a claim under the DTSA, a plaintiff must sufficiently allege "(1) the existence of a trade secret, (2) that the trade secret was protectible, and (3) that it was misappropriated by the defendant." Elmagin Cap., LLC v. Chao Chen, 2024 U.S. App. LEXIS 13608, at *4-5 (3d Cir. Mar. 21, 2024). See also N.J.S.A. 56:15-2. Plaintiff has not set forth facts sufficient to allege any prong, and moreover, has

failed to allege even that he is the proper owner to assert a claim over the alleged trade secrets.

Under the DTSA, the "owner" of a trade secret is the "person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." 18 U.S.C. §1839(4). Plaintiff originally filed this action in the name of Doctor AI LLC, who also asserted a trade secret right over the Database. Moreover, Plaintiff provided access to the Database through EGP, representing in contract that it was the owner of all the intellectual property associated with the Database, and all the datasets developed by the software engineer, Mr. Rashid, were assigned by contract to EGP. Additionally, Plaintiff's own exhibits state that DDxRx.com was the owner of the trade secret (as well as the patents).

Moreover, Plaintiff fails to allege the existence of a trade secret. A "trade secret" includes "all forms and types of financial, business, scientific, technical, economic, or engineering information," if "the owner thereof has taken reasonable measures to keep the information secret," and "the information derives economic value . . . from not being generally known to, and not being readily ascertainable through proper means, by another person." 18 U.S.C. 1839(3); see also N.J.S.A. §56:15-2.

"[P]laintiff must define his trade secret with sufficient particularity . . . to permit the defendant to ascertain. . . the boundaries within which the secret lies."

Elmagin Cap., LLC v. Chao Chen, 2024 U.S. App. LEXIS 13608, at *4-5. This requires more than simply describing the trade secret, for example, Plaintiff's data sets, but also to explain how the trade secret information cannot be readily ascertained by proper means. See Voorhees v. Tolia, 2023 U.S. App. LEXIS 18426, at *3-5 (3d Cir. July 20, 2023) (affirming dismissal for failure to articulate a trade secret where reliance on industry terms failed to "separate [the alleged secret] from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade." (internal citations omitted)).

Plaintiff describes the trade secrets broadly as encompassing a "unique and original medical database and diagnostic compilation containing over 2,200 clinical features cross-referenced with more than 15,00 diagnoses," which was "developed between 2011 and 2024 through substantial independent skills, clinical expertise, and financial investment" (Doc. 217 at ¶267(1)). According to Plaintiff's own description, the Database contains readily ascertainable knowledge, available to the public, which can be readily replicated through proper means by a similarly qualified medical professional with sufficient training.

Plaintiff alleges in a conclusory fashion that the trade secret has independent economic value. Plaintiff alleges no facts that separately support an inference of independent economic value. Plaintiff further points to no factual assertions or

actions that THOUGHTi took to allegedly transfer or disclose any trade secret information to WebMD.

Finally, because Plaintiff states in clear language that no contract ever existed between him and the two identified corporate entities, and because on the face of the pleading it is unclear who owned what intellectual property between Plaintiff, EGP, and Doctor AI LLC, Plaintiff cannot satisfy his obligation of secrecy.

Because Plaintiff has failed to adequately allege each element necessary for a claim under the DTSA, Plaintiff's Count III should be dismissed for failure to state a claim.

**E. Amendment is Futile**

As Plaintiff has had multiple attempts to cure the deficiencies in his pleading and has failed to set forth facts which would allow his claims to survive a 12(b)(6) motion to dismiss, THOUGHTi request that the FAC be dismissed with prejudice and without a right to replead. These issues cannot be resolved through additional factual assertions. Cowell v. Palmer Twp., 263 F.3d 286, 296 (3d Cir. 2001) abrogated in part on other grounds by 570 Fed. Appx. 129 (2014) (affirming dismissal with prejudice and without leave to amend where the claim "would not be able to overcome the statute of limitations, and any amendment of the complaint would have been futile"); Transperfect Holdings LLC v. Pincus Credit Suisse Sec. USA LLC, 2025 U.S. App. LEXIS 14886, at *9 (3d Cir. June 17, 2025) (affirming

the denial of leave to amend where it was clear from the face of the complaint that the claims were barred by the statute of limitations).

## CONCLUSION

For the reasons set forth above, defendant THOUGHTi requests that the Court dismiss Counts I and III of Plaintiff's FAC as to defendant THOUGHTi.

Respectfully Submitted,
/s/ *Wendi Opper Uzar*
Dated: October 9, 2026 Wendi Opper Uzar, Esq.